Adoption of Karla.

# ADOPTION OF KARLA.[1]

No. 96-P-1833.

Suffolk. October 8, 1997. - December 29, 1998.

Present: GREENBERG, SMITH, & FLANNERY, JJ.[2]

*Collateral Estoppel. Estoppel. Judgment*, Preclusive effect. *Adoption*, Dispensing with parent's consent. *Parent and Child*, Adoption, Dispensing with parent's consent to adoption. *Evidence*, Child custody proceeding. *Practice, Civil*, Reconsideration.

In a proceeding to dispense with parental consent to adoption, the judge's findings entered in July, 1995, that did not take the form of a final judgment or decree and that by their express terms contemplated further proceedings, did not constitute an appealable order and were subject to revision until the final decree was entered in December, 1995. [65-67]

In a proceeding to dispense with parental consent to adoption, a judge of the Probate and Family Court properly allowed a motion of the Department of Social Services to stay a temporary order of reunification of the mother with her children on the basis of newly discovered evidence; further, that evidence supported a finding of changed circumstances, and the judge was not precluded by an earlier finding that there was insufficient proof of unfitness from then making a finding of maternal unfitness. [68-70]

Clear and convincing evidence supported a probate judge's conclusion that the mother of a child was currently unfit to further the best interests of the child. [70-71]

PETITION filed in the Suffolk Division of the Probate and Family Court Department on April 3, 1992.

The case was heard by *Arline S. Rotman*, J.

*Kenneth F. MacIver, Jr.*, for the mother.

*Elizabeth Keliher* for Department of Social Services.

*Warren M. Yanoff* for the child.

FLANNERY, J. This is an appeal from a decree entered by the

---

[1] A pseudonym.

[2] Justice Flannery participated in the deliberation on this case and authored the opinion prior to his death.

Probate and Family Court dispensing with the mother's consent to the adoption of her eight year old daughter, pursuant to G. L. c. 210, § 3. The mother asserts that collateral estoppel principles precluded the judge's determination of unfitness, that the judge's findings were not supported by the evidence, and that her conclusion was not based on clear and convincing evidence. We affirm.

The issues on appeal involve only the mother's younger daughter, Karla, the custody of the older child having been resolved by the parties prior to the filing of the briefs. The procedural posture of the case is unusual. After a three-day trial in May, 1995, the judge entered findings, dated July 19, 1995, stating that although she could not conclude by clear and convincing evidence that the mother was then unfit, she also could not conclude that the mother was "able to meet the needs of her children once they are returned to her." The judge then ordered the matter continued for six months, during which time "[t]he parties shall transition the children to [the mother's] home, completing the process in time for the beginning of school in September." She retained jurisdiction over the matter. Upon the Department of Social Services' (department) subsequent motion to stay placement of the children with their mother, the judge took additional evidence and, thereafter, entered a decree on December 14, 1995, dispensing with the mother's consent to adoption. We turn to the issues posed by the mother on appeal.

1. *Issue preclusion.* The mother argues that the July 19, 1995, determination that the department had not proven her currently unfit had preclusive effect on the issue of the mother's fitness, thereby prohibiting the judge from entering a subsequent finding of unfitness based on new evidence. The department counters that issue preclusion is inapplicable because the July findings did not take the form of a final judgment.

As a general matter, a final judgment is required for issue preclusion to come into play. *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 n.2 (1992). *Fay* v. *Federal Natl. Mort. Assn.*, 419 Mass. 782, 790 (1995). However, it has been said that "finality" for issue preclusion purposes does not necessarily mean a final judgment in the traditional sense. *Tausevich* v. *Board of Appeals of Stoughton*, 402 Mass. 146, 148 (1988). While exceptions do exist to the final judgment requirement, the availability of appellate review is a critical factor in determin-

ing the applicability of issue preclusion principles in a given case. *York Ford, Inc.* v. *Building Inspector & Zoning Administrator of Saugus*, 38 Mass. App. Ct. 938, 941 (1995). See *Tausevich* v. *Board of Appeals of Stoughton*, 402 Mass. at 149. "[R]elitigation of an issue in a subsequent action between the parties is not precluded where '[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.' " *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 639-640 (1998), quoting from Restatement (Second) of Judgments § 28(1) (1982).[3] See *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 230 (1981) (decision by Board of Appeal on Motor Vehicle Liability Policies and Bonds, which was appealable under G. L. c. 175, § 113P, and c. 30A, § 14, was binding on subsequent small claims proceeding on issue of liability).

From a procedural standpoint, issue preclusion would seem not to apply here. To begin, the July, 1995, findings clearly did not take the form of a final judgment or decree. Cf. Mass.R. Civ.P. 58(a), as amended, 371 Mass. 908 (1977). Compare *Adoption of Reid*, 39 Mass. App. Ct. 338, 341 (1995) (although neither Massachusetts Rules of Civil Procedure nor Massachusetts Rules of Domestic Relations Procedure apply to petitions to dispense with consent to adoption, "we proceed[ed] by analogy to" selected rules, "which may be used as a 'cogent standard' " [citations omitted]). See G. L. c. 210, § 3(*b*) & (*c*) (providing that the court is to determine whether the best interest of the child will be served by issuing a decree dispensing with the need for consent, the entry of said decree terminating the parent's rights). Nor are we persuaded that the findings, which by their express terms contemplate further proceedings, constitute an appealable order. See generally *Mancuso* v. *Mancuso*, 10 Mass. App. Ct. 395, 398-401 (1980) (interlocutory appeal of Probate Court orders available only by statute or judicial authorization, particularly where express terms of interlocutory order indicated that it was not intended to be a final adjudication of the parties' rights); *School Comm. of Quincy* v. *Quincy Educ. Assn.*, 22 Mass. App. Ct. 914, 915 (1986) (since the judge's order for remand to arbitrator was one which expressly contemplated further hearing, it was not appealable). The judge, apparently in reliance on *Adoption of Carlos*, 413 Mass. 339,

---

[3]We note that the cases cited in the mother's brief regarding the requirements for issue preclusion involved prior proceedings that went to judgment.

344-345 (1992),[4] explicitly continued the proceedings for six months without entering a final decree on the G. L. c. 210 petition, based on her finding that the mother's lack of custody experience with her two daughters prevented the judge from making a definitive finding regarding the mother's ability to meet the children's needs. As our cases have explained, unfitness is inexorably bound with the question of what is in the best interests of the particular child. See *Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975); *Adoption of Paula*, 420 Mass. 716, 728-729 (1995); *Adoption of Nicole*, 40 Mass. App. Ct. 259, 262 (1996) ("[f]itness to act as a parent, in statutory and decisional context, involves inquiry not only into the capacity of the biological parent but into the best interests of the child"); *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28 (1997). Given that the mother's custody experience with Karla had been minimal since the child's birth, it is apparent that the judge declined, on the available evidence, to connect the mother's somewhat theoretical fitness to parent with this particular child's best interests. The July, 1995, findings are clear that no appealable order, decree, or judgment was entered at that time. Thus, the judge's findings were subject to revision until the final decree was entered.

The mother argues that, even if a final judgment or decree did not enter, the findings on the issue of the mother's fitness should have precluded further litigation, that the findings constituted an appealable decision in substance if not in form. To be sure, the judge, although expressly continuing the case for six months and retaining jurisdiction of the reunification process, did not announce her intention to hear new evidence until the parties convened at the October 25, 1995, hearing. The Supreme Judicial Court in *Adoption of Carlos*, 413 Mass. at 350-351, impliedly approved postponing final judgment in c. 210 cases to permit the judge to reconsider parental fitness beyond the time of trial and into the future. "None of our cases, in which we have said that current parental unfitness is a prerequisite to the allowance of a petition to dispense with consent to adoption, should be construed as *requiring* such an extreme step whenever the parents are currently unfit, or as

---

[4]The judge did not cite to *Adoption of Carlos* in her July, 1995, findings, but referred to the case in response to the mother's counsel's objections to the taking of new evidence at the hearing on October 25, 1995.

limiting the inquiry to parental fitness at the time of trial''
(emphasis original). *Id.* at 350. As the mother points out,
however, *Adoption of Carlos* is distinguishable because the case
involved a finding of current unfitness and a postponement to
give the mother an opportunity to adjust her conduct. But see
*Adoption of Katharine*, 42 Mass. App. Ct. at 34 (after reversal
of decree dispensing with the need for consent to adopt, the is-
sue of the parents' current fitness was remanded for inquiry
regarding interim events, giving the judge the discretion, pend-
ing a new determination of the parents' fitness, to return the
child to the biological parents as a "useful test of their current
capacity"). The mother in this case challenges the judge's
authority to continue a G. L. c. 210 proceeding, upon finding
that the department has not proven its case of current unfitness,
in order to assess the parent's fitness after reunification.

We need not reach the issue. Even assuming, without decid-
ing, that the July, 1995, findings were binding on subsequent
proceedings, we nevertheless view the department's September
22, 1995, motion to stay reunification based on changed
circumstances as effectively a motion for reconsideration of the
findings regarding fitness based on new or newly discovered
evidence. In her December 14, 1995, findings, the judge
recounted the September 22, 1995, telephone conference she
held with counsel, wherein the department reported that
circumstances regarding the mother's fitness had changed since
the May, 1995, hearing. A motion for reconsideration or stay is
commonly employed to revisit orders entered in the trial court.
See, e.g., *Harris* v. *Commissioner of Correction*, 409 Mass.
472, 474 (1991) (commissioner moved for reconsideration and
for a stay of order that an inmate, who claimed deficiencies in
his transfer hearing, be returned to Massachusetts); *Department
of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 52-53 (1994)
(department moved for reconsideration and a stay of the judge's
order to place the defendant in a long-term residential program);
*Care & Protection of Isaac*, 419 Mass. 602, 604 (1995) (depart-
ment moved for reconsideration and a stay of an order that the
minor be returned to school with additional staff support rather
than retained in a residential facility); *Guardianship of Brandon*,
424 Mass. 482, 499-500 (1997) (department moved for
reconsideration of findings and order regarding the ward's treat-
ment plan in light of intervening determination that treatment
center was not in compliance with departmental regulations).

In considering the department's motion to stay on account of changed circumstances, we refer to the principles of Mass.R. Civ.P. 60(b)(2), 365 Mass. 828 (1974), permitting motions for relief from final judgments or orders for newly discovered evidence. Compare *Adoption of Reid*, 39 Mass. App. Ct. 338, 341 (1995). Thus we consider whether the department's motion relied on evidence that due diligence could not have uncovered before the initial hearing in May, 1995. See *Friedman* v. *Board of Registration in Med.*, 408 Mass. 474, 475 (1990), cert. denied, 498 U.S. 1107 (1991) (board applied principles of rule 60[b][2] in considering motion for reconsideration based on newly discovered evidence).

Primary among the evidence that was first discovered after the May, 1995, hearing was, we think, the revelations of Karla's older sister regarding the mother's conduct during the seven-week period in the fall of 1994 when the two girls were returned to her. As described in the judge's findings, the older sibling reported to her therapist that the mother had permitted her boyfriend to engage in drug use in front of the children, that the mother had left the girls alone for days at a time, and that the girls had to prepare their own food and on occasion go without food. That information, which the judge found as supporting a finding of unfitness in these circumstances, could not have been offered at the first hearing. Although the older sibling had been in therapy since January, 1995, the judge found that the child's feelings toward the mother only began to emerge in therapy since May, 1995. Accordingly, the information regarding the mother's poor parenting skills during her brief period of custody, revealed in the older daughter's therapy after May, 1995, was not available and could not have been discovered for presentation to the judge at the first hearing.

Also significant was the updated report and testimony of the newly assigned departmental social worker, as reflected in the judge's findings, regarding the mother's supervised visits with Karla, which took place after the May, 1995, hearing. The evidence indicated that the mother, although keeping her appointments for visits with Karla, did not focus adequately on Karla's emotional needs during their time together. She repeatedly brought other adults or children to the visits, despite being asked not to do so, and was once observed reading the newspaper instead of interacting with Karla, even refusing the child's request that the mother read to her. The social worker

additionally reported, and the judge so found, that the mother was inconsistent in keeping appointments with support workers or in making productive use of support services. The judge found, based on the mother's conduct since the May, 1995, hearing, that the mother did not show an ability to put Karla's significant emotional needs ahead of her own.

Less compelling, in terms of new or newly discovered evidence under the rule 60(b)(2) standard, was the information offered by the guardian ad litem. While much of it pertains to his observations of interactions between the mother and the children and interviews which occurred subsequent to the May, 1995, hearing, it is likely that some of those observations, at least as to Karla's relationship with her mother and with Karla's foster mother, would have been available for report to the judge at the May, 1995, hearing, had the guardian ad litem been appointed earlier. On the other hand, the information offered by the guardian ad litem, viewed in the context of the older sibling's recent disclosures and the new social worker's observations about the mother, may have increased the judge's concerns about the mother's ability to meet the specific needs of a child who had been in foster care since shortly after her birth.

Whether or not the July, 1995, findings as to the mother's fitness were correct when they were entered based on the available evidence, subsequent events over the summer and fall of 1995 supported a different result. We are also mindful that "[i]n any proceeding involving the custody of a child concerns of res judicata must inevitably give way to an overriding concern for the welfare of the child." *Cennami* v. *Department of Pub. Welfare*, 5 Mass. App. Ct. 403, 408 (1977). In the circumstances of this case, where the parent had played a marginal role in the child's upbringing since birth, we hold that the judge's earlier finding regarding lack of proof of unfitness did not preclude her subsequent finding of unfitness, based on new or newly discovered evidence.

2. *Clear and convincing evidence of unfitness.* The mother additionally contends that the judge's December 14, 1995, findings were unsupported in the record. Specifically, she insists that several of the December findings were inconsistent with the July findings without any new evidence to support those changes.

The familiar standard in G. L. c. 210 proceedings calls for proof of parental unfitness by clear and convincing evidence.

"In recognition of the constitutionally protected interest of parents in maintaining the natural bond with their children, a judge must find by clear and convincing evidence that a parent is currently unfit to further the child's best interest." *Adoption of Katharine*, 42 Mass. App. Ct. at 27. The judge's "subsidiary findings must be proved by a fair preponderance of the evidence and will not be disturbed unless clearly erroneous." *Adoption of Quentin*, 424 Mass. 882, 886 (1997).

In our res judicata discussion, above, we outlined the new evidence that was not available and not discoverable for the May hearing. This evidence, in particular the disclosures by Karla's older sister regarding their mother's inattentive parenting during the seven weeks when the girls were in the mother's custody and the observations of the department's social worker regarding the mother's lack of sensitivity toward Karla's emotional needs over the summer months, support the judge's change of position on the statutory factors argued in the mother's brief. In addition, the guardian ad litem's report provided significant support for the judge's findings regarding Karla's attachment to her foster mother and the damaging effects of severing those ties after several years, particularly where the mother showed little sensitivity to Karla's needs and her bond with the foster mother. While not dispositive, Karla's ties to her foster mother were properly weighed in the ultimate balance. *Adoption of Nicole*, 40 Mass. App. Ct. at 262-263 (judge found that removal of child from adoptive parents, with whom she had lived since shortly after birth, would place child at serious psychological risk).

We conclude that the judge's findings are adequately supported in the record and that the department proved parental unfitness to further the best interests of the child by clear and convincing evidence. The decree entered in the Probate and Family Court allowing the department's petition to dispense with the mother's consent for adoption of Karla is affirmed.

*Decree affirmed.*