## ADOPTION OF SCOTT.[1]

No. 02-P-1637.

Suffolk. April 4, 2003. - September 12, 2003.

Present: GRASSO, DREBEN, & MILLS, JJ.

*Adoption,* Dispensing with parent's consent, Standing. *Minor,* Adoption. *Parent and Child,* Dispensing with parent's consent to adoption, Adoption.

A Probate and Family Court judge correctly denied a mother's motion, filed after the completion of trial on a petition of the Department of Social Services to dispense with the need for her consent (and that of the father) to the adoption of her four year old son, on the ground that the mother lacked standing; in the absence of extraordinary circumstances, the mother could not rely on posttrial changes in a proposed adoption plan for the child to reopen the proceedings, even where those changes preceded the entry of the decree terminating the mother's parental rights. [275-279]

PETITION filed in the Suffolk Division of the Probate and Family Court Department on February 15, 2000.

The case was heard by *Elaine M. Moriarty,* J., and a postadoption motion for an abuse of discretion hearing was heard by her.

*Thomas R. Stritter* for the mother.

*Robert L. Quinan, Jr.,* Assistant Attorney General, for Department of Social Services.

*Matthew H. Beaulieu* for the child.

DREBEN, J. This appeal by the mother is from the denial of a motion filed after the completion of trial on a petition of the Department of Social Services (department) to dispense with the need for her consent (and that of the father) to the adoption of her four year old son, Scott. The trial judge ruled that the mother lacked standing to challenge changes in an adoption plan even though she was not informed by the department of

[1] A pseudonym.

the changes and even though they had occurred prior to the entry of the decree on the petition. We affirm the denial of the motion.

1. *The proceedings below.* Although the mother's counsel participated in the trial and cross-examined witnesses, neither parent was present on June 25, June 27, or on July 6, 2001, the three days of trial.[2] On November 23, 2001, a Probate Court judge issued findings that both parents were unfit and that "it is in the best interest of the child . . . to dispense with the parents' right to consent or to notice of any petition to adopt [Scott] and to approve the Department's plan to recruit an adoptive home for [Scott]." The decree entered on the same day. Also on that day, the mother filed a "Motion to Reopen Trial for Additional Testimony." After a hearing on November 28, 2001, the trial judge denied the motion on December 13, 2001, determining that the mother had failed to provide any support or details concerning her claims of treatment and other positive accomplishments. Wisely, the mother does not contest the decision terminating her parental rights[3] or the denial of her motion to reopen the trial for additional testimony.

2. *The motion at issue.* The mother's appeal lies from the denial on January 28, 2002 of a motion, filed on December 11, 2001, entitled "Motion for Abuse of Discretion Hearing." She claimed that the department failed in its duties by not sufficiently investigating Scott's great-aunt as a possible placement

[2]The mother also failed to appear at a deposition before trial.

[3]There was ample evidence to support the judge's following findings and conclusions that the parents were unfit.

> "[The mother has] demonstrated a history of drug addiction which is reasonably likely to continue, particularly given her resistance to cooperate with needed treatment, and which makes her unlikely to provide minimally acceptable care now or in the foreseeable future."

> "[The] mother has exhibited repetitive conduct of a neglectful nature by leaving [Scott] with inappropriate caretakers for extended periods and failing to meet his physical and emotional needs."

> "[The father] has acknowledged that he cannot parent the child, he did not appear at trial and is not opposing the Department's plan for adoption."

for him,[4] see *Care & Protection of Three Minors*, 392 Mass. 704, 715-716 n.17 (1984) ("generally better to place children within their [biological] family"), and also failed in its duty to inform her, the child's counsel, and the judge that, prior to the entry of the decree and known to the department, the preadoptive parents proposed at the time of trial were no longer willing to adopt him. At a hearing on January 28, 2002, counsel for the mother argued that the department kept secret for six or seven weeks that the possible preadoptive family was no longer willing to adopt Scott. She claimed that the judge in granting the petition specifically noted with approval that that family had no children, because "given [Scott's] great need for attention and affection, placement in a home where he is a single child would be beneficial." According to counsel, since these facts were known by the department after trial but prior to entry of the decree, and since the mother should have been informed, she had standing to advance the motion.

The judge, however, pointed out that the plan was recruitment of an adoptive family, that implicit in her findings was the possibility that a childless family might not be found, and that the mother had had the opportunity to propose the placement with the great-aunt and had not done so. She denied the motion on the ground that the mother lacked standing since her rights had been terminated. See *Adoption of Helen*, 429 Mass. 856, 861-862 (1999); *Adoption of Willow*, 433 Mass. 636, 647-648 (2001); *Adoption of Donald*, 52 Mass. App. Ct. 901 (2001). Both orally and in her written endorsement on the motion, the judge indicated that she and counsel for the child[5] would be reviewing the plans for the child. The endorsement on the motion stated:

> "1/28/02 Denied. Mother's rights have been terminated and for this hearing she lacks standing. Child's attorney shall monitor DSS efforts to place child and the Court will

---

[4]The great-aunt was the sister of Scott's grandmother. The grandmother had adopted another child of the mother.

[5]Indeed, at the January 28, 2002 hearing, counsel for the child strongly urged the department to investigate the great-aunt as a possible placement, and the department agreed to do so.

be reviewing placement status periodically. See *Adoption of Helen* [, *supra.*]"

On appeal, in an attempt to overcome the statutory and judicial bar[6] to her ability to interfere in plans for the child after entry of a decree terminating her parental rights, the mother argues that her motion, despite its label, was in effect a motion for relief from judgment for the reason of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[7] See Mass. R.Civ.P. 59(b), 365 Mass. 827 (1974). Not only did the mother not make this argument below, but in the absence of extraordinary circumstances, not here present, the mother may not rely on posttrial changes in a proposed plan for the child to reopen the proceedings even if they precede the entry of the decree.[8]

---

[6]General Laws c. 119, § 26(4), and G. L. c. 210, § 3(*b*), provide as follows:

> "The entry of [a decree to dispense with the need for consent of any person named in c. 210 § 2, to the adoption of a named child] shall have the effect of terminating the rights of a person [so] named . . . to receive notice of or to consent to any legal proceeding affecting the custody, guardianship, adoption or other disposition of the child named therein."

[7]Our cases indicate that it is appropriate to use the Massachusetts Rules of Civil Procedure as a standard. See *Adoption of Hank*, 52 Mass. App. Ct. 689, 692 n.8 (2001). For purposes of this opinion, we do not consider whether the change in plan is newly discovered evidence, whether the December 11 motion was timely, or whether other requirements, if any, of Mass.R.Civ.P. 60(b)(2), 365 Mass. 828 (1974), were satisfied.

[8]While our decisions have not explicitly so held, they seem to support this conclusion. Inherent in the nature of a G. L. c. 210, § 3, petition is the recognition that upon determination that a biological parent is unfit, the parent shall have no further rights to determine the child's future. In *Adoption of Helen*, 429 Mass. at 862 & n.11, the court rejected the mother's right to review and redetermination under G. L. c. 119, § 26, after the judge had dispensed with the mother's consent to adoption pursuant to G. L. c. 210, § 3, stating that such review not only would contradict the language of the statute, but also "would allow a parent who has been deemed unfit continually to interfere with the child, initiate multiple litigation, and hinder and delay the eventual adoption of the child into a fit environment." The court also noted that, posttrial but before the decree entered, the mother had filed a motion for a new trial, which was denied. *Id.* at 862 n.11. The mother appealed from that denial relying on the same arguments she raised in appealing from the denial of her motion for a review and redetermination hearing. *Ibid.* Since the court

We are buttressed in this conclusion by the statutory and judicial framework established for adoption proceedings. Our cases recognize that in "many . . . cases no preadoptive parents have been identified when the parental rights of the biological parents are terminated," *Adoption of Vito*, 431 Mass. 550, 564 & n.24 (2000), and that, while a fully developed adoption plan is preferable, it "is not an essential element of proof" in a petition brought under G. L. c. 210, § 3. *Adoption of Paula*, 420 Mass. 716, 723 n.7 (1995). Even when the department's shift is as radical as a change from a plan of adoption to one of guardianship or other disposition, after a finding of unfitness the Legislature has provided that a person named in the G. L. c. 210, § 3, petition is not entitled to additional notification. *Adoption of Willow*, 433 Mass. at 646.

Notification to the parties during trial and to the child's attorney and the judge is a different matter. As the department conceded at the January 28, 2002 hearing, the department must at all times "inform[] counsel for the child as soon as [any] placement with the preadoptive family unravel[s]." *Adoption of Terrence*, 57 Mass. App. Ct. 832, 841 (2003).

The judge, too, remains involved. Uniform Probate Court Practices Xa pars. 13-18 (2003), provide significant judicial oversight over posttrial adoption plans. The date for the adoption to be finalized must be contained in the decree, par. 14, and the department is required to submit a status report to the court on a quarterly basis. Par. 18. Where adoption has not been effected within the period ordered by the decree, a show cause

held that there was no error in denying the motion for a new trial, the text and accompanying note 11 suggest that the considerations precluding posttrial review after entry of the decree also apply to events occurring after trial but prior to the entry of a decree.

See *Adoption of Willow*, 433 Mass. at 644 n.8, where, in discussing the fact that posttrial the children were sent to live with their father despite the discussion of an adoption plan at trial, the court stated:

> "To take into account information concerning posttrial events would diminish finality and efficiency, interests that are important in these proceedings."

The decree in that case entered four months after trial, but the court did not indicate whether the referred to posttrial events preceded or followed the entry of the decree.

hearing is to be held. Par. 15. The extensive statutory and judicial procedures that provide for judicial review of posttrial adoption events and that require full information of any changes in plan to be given to the child's attorney are the methods by which the child's posttrial interests are to be advanced and protected. We consider the following language of *Adoption of Willow*, 433 Mass. at 647-648, applicable to posttrial events whenever they occur, whether before, or after the issuance of a decree:

> "The Legislature surely did not contemplate that whenever there is a change in circumstances and a new option arises, as happened here, the department is required to return to square one and relitigate the rights of an unfit parent."

Accordingly, the denial of the mother's motion was proper, particularly here, where the mother did not participate in the trial. She is not entitled posttrial to be involved in the future plans for the child.[9]

*Order denying posttrial motion
entered on January 28, 2002,
affirmed.*

---

[9]The mother's motion to strike the department's supplemental appendix is allowed. See *Adoption of Inez*, 428 Mass. 717, 721-722 (1999).