### ADOPTION OF CESAR.[1]

No. 06-P-437.

Berkshire. September 8, 2006. - November 8, 2006.

Present: GREENBERG, GREEN, & GRAHAM, JJ.

*Minor,* Adoption. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Adoption,* Dispensing with parent's consent. *Evidence,* Child custody proceeding.

In the circumstances of a care and protection proceeding in the Juvenile Court, the judge's determination of the mother's unfitness was adequately supported by his subsidiary findings of fact [711-712], and there was no error in his conclusion that freeing the child for adoption by his proposed preadoptive family would serve the child's best interests [712-713]; further, while the failure of the Department of Social Services to alert the trial judge to a change in the child's preadoptive placement did not require this court to vacate the termination decree, the judge nevertheless erred in refusing to reassess on the basis of material posttrial developments the question whether termination of the mother's parental rights in the then current circumstances would best serve the interests of the child; this court therefore reversed the judge's denial of the mother and child's motions to reopen the evidence, vacated the termination decree, and remanded the matter for further proceedings [713-717].

PETITION filed in the Berkshire County Division of the Juvenile Court Department on April 2, 1998.

The case was heard by *Paul E. Perachi,* J., and posttrial motions were heard by him.

*Patricia Quintilian* for the mother.

*Lisa M. Kling* for the child.

*Muriel Ann Finnegan* for Department of Social Services.

GREEN, J. Cesar was five years old when, on April 1, 1998, the Department of Social Services (department) removed him (and three older siblings) from his mother's custody and initiated a petition for their care and protection. During the period

---

[1]A pseudonym.

preceding the petition, his mother and her then boyfriend regularly abused drugs and alcohol — and her children.

Cesar was eleven years old in early 2004 at the beginning of the trial that gave rise to the present appeal, and had been living for approximately four months with a foster family in a preadoptive placement.[2] By that time, Cesar's mother had moved to New York to be near her family, terminated her relationship with her former boyfriend, obtained steady employment, successfully completed treatment for substance abuse (and been drug and alcohol free for more than three years) and, with the department's agreement, regained custody of two of Cesar's older siblings.[3] She regularly attended meetings of Alcoholics Anonymous and services of the Jehovah's Witnesses. Her social worker in New York described her recovery as a "miracle."

Cesar's recovery from the prior abuse was less complete. Approximately one month following the trial, he set a fire in the woods near the home of his preadoptive family. That act (which represented a troubling continuation of previous fire-setting behavior[4]) led to his removal from the preadoptive placement and to his return, in July 2004, to a supervised group home.

On February 4, 2005, the trial judge (unaware of Cesar's removal from the preadoptive placement) entered a decree terminating the mother's parental rights, citing concern that the mother, though fit to parent Cesar's siblings, lacked the ability to meet Cesar's particular needs, and the belief that Cesar's interests would best be served through adoption by his preadoptive family. Both Cesar and his mother filed notices of appeal from the decree.

On June 10, 2005, counsel for Cesar and his mother filed motions to "re-open the evidence."[5] After hearing argument, the trial judge denied the motions, expressing the view that

---

[2]As we shall describe below, the trial was the second of two trials, and occurred by reason of the judge's determination that improvement in the mother's condition warranted reevaluation of the question of her parental fitness.

[3]A third sibling attained the age of eighteen on April 25, 2002.

[4]Cesar was hospitalized in September of 1999, when he threatened to set another child on fire following a family therapy session. In December, 2000, Cesar set a fire in the bathroom at school and was again hospitalized.

[5]Though captioned as noted, it appears that the motions sought relief under

"[t]his case needs some finality. I think it's appropriate to pursue this in the Appeals Court . . . . [This] Court's made a determination at the time of the trial [that the] Mother was unfit, [and] her [parental] rights were terminated."

We conclude on the particular facts of this case that the judge erred in refusing to reassess on the basis of material posttrial developments the question whether termination of the mother's parental rights in the then current circumstances would best serve Cesar's interests. We accordingly reverse the denial of the motions to reopen the evidence, vacate the termination decree, and remand for further proceedings.

*Background.*[6] Following an evidentiary hearing on September 6, 2000, and proposed findings submitted by the mother on October 17, 2000, and by the children and the department on January 5, 2001, the judge, on August 30, 2001, issued a finding "that [the mother] does not have the ability, capacity, fitness or readiness to parent [the children]," and that "[h]er unfitness is demonstrated by the fact that she is a substance abuser who relapsed on alcohol during the trial of this matter . . . . In doing so she failed to continue her already sporadic engagement with her service plan . . . ." The mother filed objections to that finding with the trial court and, on October 16, 2001, filed a notice of appeal to this court. The department thereafter filed a motion to amend the findings, but the judge did not act on the department's motion. The mother's appeal was later discharged as premature.[7]

On April 24, 2002, with the department's motion for amended findings still pending, and no decree having entered, the mother moved for a new trial on the ground that the mother's condition had improved sufficiently in the time since the close of the trial to warrant the judge's consideration of new evidence bearing on his previous finding of unfitness to parent two of Cesar's older

Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). See *Adoption of Gillian,* 63 Mass. App. Ct. 398, 410 (2005).

[6] We summarize the tortuous procedural history of the case to lend context to its posture in the present appeal. We shall reserve for our discussion of the legal issues our summary of the facts bearing on the issues.

[7] On April 5, 2002, the trial court sent notice of assembly of the record to the parties and this court, but on April 11, 2002, the record was returned to the trial court as prematurely assembled.

siblings (the third and oldest sibling having attained the age of eighteen, see note 3, *supra*). The mother's new trial motion specifically cited the desire of Cesar's two older siblings to live with the mother, along with the mother's improved capacity to parent them, in support of her request. The motion did not mention Cesar. The motion was allowed on December 12, 2002, and on December 30, 2002, the judge issued a supplemental order stating that "[i]t is logical to assume that if mother has made significant changes in her life such that she may be currently fit to parent [the two older children] she may also be fit to parent [Cesar]." On March 22, 2004, the department and the mother entered a stipulation dismissing the department's petition as to Cesar's two older siblings, and trial proceeded on that date with respect to Cesar alone.

On January 24, 2005, the department filed a motion for a decision, as no findings or decree had yet entered from the trial held the previous March.[8] The department made no mention in its motion of the facts that Cesar had been removed from his preadoptive placement in July following a fire-setting incident and that Cesar had remained in a residential group home since that time. As we have noted, the findings and decree terminating the mother's parental rights entered on February 4, 2005, and the judge thereafter denied motions by the mother and Cesar to reopen the evidence.

*Parental unfitness.* The mother contends that the trial judge's subsidiary findings of fact are based on stale evidence and, in any event, do not support his conclusion that she is unfit to parent Cesar.

"Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." *Adoption of Mary*, 414 Mass. 705, 711 (1993). Though the determination must be based on current evidence, see *Adoption of Ramona*, 61 Mass. App. Ct. 260, 264 (2004), "[w]hen a parent's living situation

---

[8]The department served its motion on Cesar's former trial counsel, whose motion to withdraw had been allowed on August 6, 2004, rather than on Cesar's successor counsel (who was appointed the same day). A third successor counsel was appointed to represent Cesar in this appeal.

has changed, a judge nonetheless properly may rely on evidence of past parental abuse or neglect to the extent that this evidence has relevance to current parental fitness." *Adoption of Paula,* 420 Mass. 716, 729 (1995). A parent may be fit to raise one child and unfit to raise another, in circumstances where the needs of the two children differ. See *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption,* 395 Mass. 180, 185 n.6 (1985).

The judge in the present case noted the significant improvements made by the mother, including her prolonged freedom from her former substance abuse and her demonstrated ability to care for Cesar's older siblings. However, though (as the mother observes) many of the findings of abusive behavior related to conduct that occurred more than four years prior to trial, that prior abuse had continuing relevance to the mother's fitness to parent Cesar. In particular, the judge found that "[a]fter two years of therapy . . . , [Cesar] is just now beginning to discuss the abuse and neglect he suffered in Mother's care," and noted Cesar's repeated expressions of his desire to be adopted. The judge further noted the belief of Cesar's therapist that "[Cesar] would suffer significant deterioration should he be reunited with [the] Mother." The judge noted the mother's acknowledgment that "it is not realistic for [Cesar] to return to her today, given the emotional issues that he has to deal with," and observed that, at the time of the decree, Cesar had been out of his mother's care for over six years and had not seen her for five years. We conclude that the judge's determination of parental unfitness was adequately supported by his subsidiary findings of fact; despite the mother's progress in putting her own life together, her previous abuse of Cesar continued to evoke feelings of anger in him that made her uniquely unsuited to meet his particular needs.

*Best interests.* "A determination of parental unfitness is the first of two 'cognate and connected' steps in the process of determining whether termination of parental rights should occur." *Adoption of Ramona,* 61 Mass. App. Ct. at 265, quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 641 (1975). The two steps are not separate and distinct, but "reflect differ-

ent degrees of emphasis on the same factors." *Ibid.* On the record as developed through the trial, Cesar had expressed his desire to be adopted and was living stably in a compatible preadoptive placement. There was no error in the judge's conclusion that freeing Cesar for adoption by his preadoptive family would serve Cesar's best interests.

*Posttrial changes.* Cesar's case is complicated by the significant changes that occurred during the lengthy period following conclusion of the trial and entry of the findings and decree. As we have noted, Cesar set a fire approximately one month following the trial, and that behavior led to his removal from his preadoptive home and later (following a brief hospitalization) to his placement in a group home (where he remained through entry of the decree). During that interval, Cesar also turned twelve, the age at which his consent is required to any adoption. See G. L. c. 210, § 2.

Citing *Adoption of Terrence*, 57 Mass. App. Ct. 832 (2003), Cesar and his mother contend that the decree should be vacated by reason of the department's failure to bring to the judge's attention the fact that Cesar had been removed from his preadoptive placement. In *Terrence*, the mother moved for reconsideration of the denial of her posttrial motion for visitation. Though the department was aware at the time of the hearing on the mother's motion that the proposed preadoptive placement had unraveled, it withheld that information from the judge and from counsel for both the mother and the child. Observing the position of heightened responsibility toward the child the department occupied in that situation, we stated that the department "should have informed counsel for the child as soon as the placement with the preadoptive family unraveled . . . [and] should also have fully explained the changed circumstances to the judge at the hearing." *Id.* at 841. We vacated the orders denying visitation and reconsideration, and remanded for further consideration of the issue of visitation in light of the disruption of the previously proposed preadoptive placement.

Cesar and his mother argue that the department's failure in the present case to notify the judge and Cesar's counsel of Cesar's removal from his preadoptive placement mandates that we vacate the decree of termination. As a threshold matter, however,

we established no such automatic response in *Terrence*. The department observes that, though Cesar had been removed from his preadoptive placement in July, 2004, the department did not change its plan from adoption to long-term substitute care until after the decree had entered. On the present state of the record, we cannot determine with certainty how viable the proposed plan of adoption remained at the time the department moved for the entry of findings and a decree. We are likewise unable to determine whether Cesar's counsel was aware of the change in Cesar's placement, but failed like the department to bring it to the judge's attention.[9] Though we do not condone the department's failure to communicate to the other parties and the judge a material change in the child's preadoptive placement (and, indeed, we reiterate our view that the department should have brought the change to the judge's attention), we decline to rest a conclusion that the decree must be vacated on that failure, on the state of the present record.

Our consideration of the impact of posttrial changes in the present case does not end with our conclusion that the department's failure to alert the trial judge to the change in Cesar's placement does not require us to vacate the decree. Shortly following entry of the decree, both Cesar and his mother moved to reopen the evidence. See note 5, *supra*. Included with the motions was an affidavit in which Cesar expressed his wish not to be adopted, and his desire to learn more about his mother and his siblings. Also before the judge as he considered the motions was the information of Cesar's removal from his preadoptive placement (and substitute placement in the group home), as well as the fire-setting event which led to that removal. After hearing argument from the parties on the motions, the judge declined either to reopen the evidence or to reconsider the

[9]Cesar's first successor counsel was appointed on August 6, 2004, after Cesar had been placed in the group home. Cesar does not assert on appeal that his counsel was unaware of his removal from his preadoptive placement until after entry of the decree. We note the guidance set forth in standard 1.5(a) of the CPCS Performance Standards Governing Representation of Children in State Intervention and Parental Rights Termination Cases (2004), which states, in pertinent part, that "[i]mmediately upon receipt of notice of the assignment, counsel shall take appropriate steps to locate his or her client . . . and [shall] meet with the client as soon as practicable."

decree of termination, stating his view that "[t]his case needs some finality" and that at the time of trial "[the] Mother was determined to be unfit, [and] her rights were terminated."

The department argues that this case closely resembles *Adoption of Scott*, 59 Mass. App. Ct. 274 (2003). In *Scott*, we affirmed the denial of the mother's posttermination motion seeking consideration of a kinship adoption plan, based on the department's failure to alert the mother or the judge to a disruption in the previously proposed adoptive placement. *Id.* at 277. We disagree.

To begin with, our holding in *Scott* rested on our conclusion that the mother was without standing to raise the issue of a particular adoptive placement once her parental rights were terminated.[10] Additionally, the judge in *Scott* observed that the plan approved in her decree was for recruitment of an adoptive family, inherently anticipating the possibility that an adoptive family might not be found. See *id.* at 276.

In the present case, by contrast, the decree of termination remained subject to challenge at the time the mother sought relief and is among the issues she pursues in this appeal. Since the determination of unfitness remains the subject of a live challenge, the basis for our conclusion in *Scott* that the mother was without standing does not apply in the present case. In any event, Cesar clearly had standing to raise the question whether, in light of the disruption of his proposed adoptive placement, termination of his mother's rights would serve his best interests. Moreover, in the unusual circumstances of this case, the determination that termination would serve the child's best interests appears to have rested more on the preferability of an available adoptive placement and on the child's wishes than on continuing unresolved deficiencies in the mother's parenting abilities.

We are cognizant of the importance of finality and efficiency in these proceedings. See *Adoption of Willow*, 433 Mass. 636, 644 n.8 (2001). However, we have recently confirmed that it is permissible (albeit in the context of orders on visitation) for a

---

[10]The mother did not contest on appeal the decree terminating her parental rights, and we noted key portions of the evidence illustrating the support for that decree. See *Adoption of Scott*, 59 Mass. App. Ct. at 275 & n.3.

trial court judge to consider posttrial events where material changes in circumstances suggest that modification of the decree would serve the child's best interests. See *Adoption of Edgar*, 67 Mass. App. Ct. 368, 373 (2006).[11] In our view, the present case presents extraordinary circumstances in that (i) the mother has essentially resolved the issues of substance abuse, unstable housing, and abusive domestic partners that caused the placement of her children in protective custody in the first instance; (ii) the conclusion that termination would serve the child's best interests appears to have rested more heavily on the availability of an adoptive placement and the child's then wishes than a concern for further abuse or neglect by the mother; (iii) the anticipated adoptive placement appears to have been disrupted following conclusion of the trial and before entry of the decree, but the judge was unaware of that fact when he weighed the question whether termination would serve the child's best interests; and (iv) the child has, in the intervening time, attained the age at which his consent is required for adoption, and has indicated (contrary to the evidence at trial) a desire that he not be adopted. In these circumstances, we conclude it was not an appropriate exercise of discretion for the judge to refuse to consider the question whether Cesar's interests would best be served by termination of his mother's rights, once he was presented with evidence that the preadoptive placement was no longer viable, and that another placement was unlikely.[12]

Cesar is now fourteen years old. He has expressed his wish not to be adopted, and to learn more about his mother and siblings. While the unraveling of a proposed adoptive placement does not necessarily preclude termination, see *Adoption of Nancy*, 443 Mass. 512, 516-517 (2005), it is unclear to us whether the judge would have concluded that termination would best serve Cesar's interests in the present case in the absence of a stable adoptive placement. Accordingly, we reverse the denial of the motions to reopen the evidence, vacate the decree, and

[11]By contrast, we do not consider additional evidence submitted with the appeal. See *Adoption of Inez*, 428 Mass. 717, 721-722 (1999). Accordingly, Cesar's motion to enlarge the record is denied.

[12]We consider the judge's reliance on the importance of finality to be particularly misplaced given the length of time that passed between conclusion of the trial and entry of the findings and decree.

remand the matter for further proceedings in the Juvenile Court to determine, in the current circumstances, whether termination would serve Cesar's best interests. We leave to the sound discretion of the trial judge the determination of the scope and nature of the evidence needed to present an accurate portrayal of the current circumstances.

*So ordered.*