## ADOPTION OF NATE.[1]

No. 06-P-1912.

Worcester. May 3, 2007. - June 20, 2007.

Present: DUFFLY, ARMSTRONG, & KAFKER, JJ.

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption. *Minor,* Adoption. *Department of Social Services. Practice, Civil,* Judicial discretion, Reconsideration.

Although a Juvenile Court judge abused his discretion in vacating a decree terminating a mother's parental rights because of the Department of Social Services' failure to secure a permanent placement for her child, rather than following the standard permanency review process mandated by G. L. c. 119, § 29B [374-377], the judge did not abuse his discretion in allowing a motion for reconsideration to correct this error, and was not required to conduct a new trial pursuant to G. L. c. 210, § 3 [377].

PETITION filed in the Worcester Division of the Juvenile Court Department on January 8, 2002.

A motion for relief from judgment, filed on April 5, 2005, was heard by *George F. Leary,* J., and a motion for reconsideration, filed on August 8, 2005, was also heard by him.

*Margaret M. Geary* for the mother.

*Richard A. Salcedo* for Department of Social Services.

*Warren M. Yanoff* for the child.

KAFKER, J. Frustrated by the failure of the Department of Social Services (department) to identify a permanent placement for Nate, a troubled ten year old child, within one year after the termination of the mother's parental rights, a Juvenile Court judge vacated the decree terminating the mother's parental rights. The care and protection judgment, however, remained in place, and custody of the child remained with the department. The judge, in response to a motion by the department, then reconsid-

---

[1]A pseudonym.

ered his decision and reinstated the decree retroactive to the date of its original issuance. We conclude that the judge initially erred when he sought to resurrect the mother's parental rights because of the failure of the department to secure a permanent placement for the child, but that the judge properly corrected his own error.

*Background.* On May 6, 2004, after four days of trial and the introduction of thirty-seven exhibits including eight supported reports of abuse and neglect, the mother signed a stipulation for judgment. After a colloquy with both parents, the Juvenile Court judge approved the stipulation and, pursuant to G. L. c. 119, § 26, and G. L. c. 210, § 3, a decree terminating the mother's parental rights was entered.

The stipulation provided that "[t]he mother understands that by withdrawing her objections . . . the minor child will be adjudicated in need of care and protection and committed into the custody of the Department . . . and that her right to receive notice and to consent to the child's adoption or guardianship is terminated and that the child is free to be adopted or placed under guardianship." The stipulation also stated that "[t]he Department agrees that it shall make a good faith effort to locate an adoptive resource that would be open to some form of post-adoption contact, including visitation." The mother was provided with four visits per year, which number could be increased or decreased by the department if the child was placed in a preadoptive home, the department changed its goals for the child, or the child's therapist recommended a change. The agreement further provided that, when the child was placed in a preadoptive home, the parties would negotiate a formal open adoption agreement and that "[t]he Department [would] notify the parties . . . in the event that the adoption plan approved by the court changes."

Although the docket reflects that a permanency plan for adoption was approved by the judge, the child, who had significant behavioral issues requiring one-on-one attention, was placed in a residential treatment center. Despite the plan for adoption, the child remained in the residential placement throughout the course of the proceedings in the instant case.

On July 9, 2004, approximately two months after the decree entered, the mother filed a petition to become the child's guar-

dian. In response, the judge appointed a guardian ad litem to determine the mother's suitability to be a guardian.[2] In March, 2005, a second guardian ad litem, who had been appointed by the judge in December, 2004, filed her report regarding the mother. That report described the history of the mother's neglect and abuse of her children,[3] found some progress by the mother and her live-in boyfriend, and noted a variety of reservations regarding the mother's capacity to parent.[4] On April 5, 2005, the judge held a hearing with the mother, the department, and counsel for the child.[5] The judge expressed frustration with the department for still not having a plan, and the department blamed the lack of progress on the mother's interference. Nearly one year after the decree had entered, the child was still in the residential treatment center, and a preadoptive family had not been identified. The judge stated, "The Department hasn't got a Plan, if they come up with a Plan that's better than you then I'm giving the Department the Plan, if they don't then I'm giving the child to you so long as you maintain sobriety." The judge also strongly encouraged the child's counsel to file a motion for relief from judgment.

The child's counsel complied "somewhat reluctantly." The child's counsel's motion for relief from judgment simply stated that, a year after the decree entered, there was no adoptive resource for the child and that this was not in the child's best interests. On June 29, 2005, after another hearing, the judge, as noted above, with quite limited information concerning the mother's fitness, vacated that part of the decree that terminated the mother's parental rights, but left the care and protection judgment and custody of the child with the department. During that

---

[2]The first guardian ad litem filed a report on October 5, 2004.

[3]The mother had lost custody of Nate's three older siblings.

[4]For example, the report included the following: "Although I believe that it is risky to place [Nate] with [the mother], if this Court wants to go forward with a plan for [the mother] to become the guardian of [Nate], then I suggest . . . weekly drug screens for [the mother and her boyfriend] . . . . If [Nate's] behavior deteriorates, another plan for [Nate's] placement needs to be considered. With all those traumatic memories swirling around his mind, living with [the mother] may be too much for [Nate] to tolerate. In the past, [the mother] has lied about her sobriety as has [her boyfriend]."

[5]The second guardian ad litem testified at hearings held on April 15, 2005; June 29, 2005; and August 17, 2005.

hearing, the department's attorney stated that the child was not in the preadoptive program at the residential treatment center.

The department filed a timely notice of appeal. On August 8, 2005, just before another hearing, the department also filed a motion for reconsideration seeking to reinstate the termination of the mother's parental rights. Three more hearings were held, and at the last hearing on January 24, 2006, the judge allowed the motion for reconsideration and reinstated the decree retroactive to the date of its original issuance. As the judge explained, he "was primarily concerned that [Nate] was without a permanent placement . . . [and that he] also hoped (if no alternative placement was identified) that the petitioner would reassess the mother and perhaps place [Nate] with her." The judge "recognize[d] that some of these concerns could have been handled in a permanency hearing but was concerned that compelling the petitioner to provide [the] mother with services was beyond the remedies available in a permanency hearing." Nevertheless, upon reconsideration, the judge determined that "relief from judgment in the form of vacating the decree . . . was neither necessary nor justified as none of the grounds incorporated within rule 60(b) of the Rules of Civil Procedure[, 365 Mass. 828 (1974,)] are applicable." The judge concluded that having accomplished the "important goals" of identifying a permanent placement for the child (his maternal aunt) and securing the department's services for the mother as a client, "further review of the matter outside of the permanency hearing process is not deemed warranted." The child did not appeal the decision allowing the motion for reconsideration. Rather, his counsel argued, as did the department, that the order allowing the motion for reconsideration should be affirmed. The mother appealed.

*Discussion.* The judge abused his discretion by his initial decision to vacate the decree terminating the mother's parental rights. See *Care & Protection of Georgette*, 439 Mass. 28, 33 (2003). No argument was made to the judge, nor has any argument been made to this court, that the stipulation regarding the mother's unfitness and the termination of her parental rights was not knowingly and voluntarily entered into by the mother. See generally *Adoption of Thomas*, 408 Mass. 446, 450 (1990)

("For an expression of consent [to the termination of parental rights] to be effective, it must have been given voluntarily and on the basis of a full understanding of the facts necessary to the consent"). See *Adoption of John*, 53 Mass. App. Ct. 431, 434-435 (2001). The very limited information regarding the mother's posttermination improvement was also certainly not enough to vacate the decree. Compare *Adoption of Theodore*, 36 Mass. App. Ct. 355, 357 (1994). The judge never determined the mother to be fit, though he indicated that she might become fit, nor was her fitness the basis of the motion to vacate. The stipulation here was not simply for care and protection, "which primarily addresses only current fitness and is reviewable every six months," but rather the ordinarily "irreversible termination of the parent-child legal relationship under [G. L. c.] 210[,] § 3." *Adoption of Carlos*, 413 Mass. 339, 350-351 (1992).

The judge nonetheless decided that the lack of progress on the part of the department in securing a placement for the child was ground to reintroduce the mother into the permanent placement process and vacate the decree. The proper procedure for addressing the progress made by the department in developing and implementing a plan for the child is instead the permanency hearing mandated by G. L. c. 119, § 29B. As G. L. c. 210, § 3, expressly states, the parent whose rights have been terminated has no right to participate in a § 29B proceeding. *Adoption of Donald*, 52 Mass. App. Ct. 901, 901-902 (2001).

At a § 29B hearing, the judge should be addressing his concerns to the department without the involvement of the parent whose rights were terminated. "[O]nce a surrender has been signed, the biological parent has surrendered custody of the child to the department. The department then becomes the facilitator of the child's adoption." *Adoption of Derrick*, 415 Mass. 439, 445 (1993). As the department contended at the hearing, and as has been recognized in the case law, the involvement of a parent whose rights have been terminated disrupts planning and implementation of a permanent placement. See *Adoption of Helen*, 429 Mass. 856, 861 (1999); *Adoption of Willow*, 433 Mass. 636, 647 (2001).

Although well-intentioned, the judge's decision not to follow

the standard permanency review process was error.[6] "[I]n the absence of extraordinary circumstances," a mother whose rights have been terminated cannot pursue posttrial challenges to changes in an adoption plan. *Adoption of Scott*, 59 Mass. App. Ct. 274, 277 (2003).[7] Nevertheless, within two months of the entry of the decree, the judge had reintroduced the mother into the proceedings. Later, the judge prevailed upon the child's counsel to file a motion to vacate the decree, which the judge allowed, despite quite limited information regarding the mother's fitness. The motion that the child filed also focused only on the department's lack of progress in finding an adoptive home or a permanent placement for the child, not the mother's fitness. Even if the department had been lax in its efforts regarding the permanent plan (and it is unclear whether that is so given the disruption caused by the imposition of the terminated parent into the placement process and the difficulty inherent in placing a deeply troubled ten year old child), the proper course for the judge was not to resurrect the mother's parental rights and interject her into the adoption process, but rather to compel the department to fulfil its responsibilities. *Adoption of Scott*, 59 Mass. App. Ct. at 278-279 (describing judicial oversight of posttrial adoption plans). See generally *Adoption of Helen*, 429 Mass. at 862 ("Accepting the mother's stance . . . would allow a parent who has been deemed unfit continually to interfere with the child . . . and hinder and delay the eventual adoption of the child").[8]

The fact that a biological mother may have made some post-

---

[6]We note that the guardianship petition was properly dismissed by another judge on February 6, 2006, before any action was taken with respect to the mother's request. The mother withdrew her appeal of that decision on January 18, 2007.

[7]For an example of such "extraordinary circumstances," combining a timely and proven return to fitness and a complete breakdown in the permanent placement process, see *Adoption of Cesar*, 67 Mass. App. Ct. 708, 716 (2006).

[8]We note that the department did have certain posttermination responsibilities to the mother that were set out in the stipulation. Although the mother expressly waived "her right to receive notice and to consent to the child's adoption or guardianship," the department was to make "a good faith effort to locate an adoptive resource that would be open to some form of post-adoption contact." The department was also to provide the mother with four visits per year, which could be increased or decreased by the department, if the child was placed in a preadoptive home or the department changed its goal for the

termination progress does not change the analysis. "The Legislature surely did not contemplate that whenever there is a change in circumstances . . . the department is required to return to square one and relitigate the rights of an unfit parent." *Adoption of Willow*, 433 Mass. at 647-648.[9]

Eventually, the judge concluded that he had erred in vacating the decree terminating the mother's parental rights. He then allowed the department's motion for reconsideration, thereby reinstating the decree retroactive to the date of its original issuance. The mother contends that, once her parental rights had been restored, the judge could not at that point terminate them without conducting a new trial pursuant to G. L. c. 210, § 3.

"A motion for reconsideration . . . is commonly employed to revisit orders entered in the trial court." *Adoption of Karla*, 46 Mass. App. Ct. 64, 68 (1998). As the original decision vacating the termination of parental rights was an abuse of the judge's discretion, we conclude that it was no abuse of discretion to allow a motion for reconsideration to correct this error and that a second trial to terminate those rights pursuant to G. L. c. 210, § 3, was not required.[10]

*Order reinstating the decree of*
*May 6, 2004, affirmed.*

---

child or the child's therapist so recommended. Elsewhere in this section addressing visitation and open adoption, the department also agreed "to notify the parties to this proceeding in the event that the adoption plan approved by the court changes." The meaning of this provision, at least in regard to the mother, is not clear and was not addressed by either the mother or the department on appeal. Regardless, we do not interpret this provision as in any way providing a basis for resurrecting the mother's parental rights.

[9]As explained above, this is not a case where the evidence presented to the judge established that the mother was fit. Compare *Adoption of Theodore*, 36 Mass. App. Ct. at 357-358; *Adoption of Cesar*, 67 Mass. App. Ct. at 716.

[10]Having concluded that the mother's appeal is without merit, we need not consider the alternative argument raised by both the child and the department that the mother lacks standing to appeal.