The mother appeals from a decree issued by a judge of the Juvenile Court terminating her parental rights to the child and dispensing with her right to consent to his adoption. We affirm.[3]
Background. We begin with a brief summary of the facts, reserving other relevant facts for the discussion of the issues. In 2012, the mother gave birth to the child while she was incarcerated, and the child was placed in the care of the Department of Children and Families (department). The department initially established a plan for the mother to reunify with the child, but the mother failed to follow this plan and it was changed to one for adoption. In 2015, the mother stipulated to her unfitness. The following year, a termination trial proceeded over the course of three days in the Worcester Juvenile Court. The mother did not attend. After hearing all of the evidence, the judge determined that the mother's unfitness was likely to continue into the indefinite future and terminated her parental rights, dispensing with the need for her parental consent to adoption. This appeal followed.
Discussion. 1. Termination of mother's parental rights. A decision to terminate parental rights calls for a two-step analysis. See G. L. c. 210, § 3 ; Adoption of Nancy, 443 Mass. 512, 515 (2005). First, the judge must find, by clear and convincing evidence, that the parent is unfit. Id. at 514-515. Second, a judge must determine whether the termination of parental rights serves the best interests of the child. Id. at 515. When determining unfitness, "no one factor is determinative and the judge should weigh all the evidence." Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 290 (1987). "The judgment must analyze the parent's character, temperament, capacity and conduct in relation to the particular child's needs, age, affections and environment." Adoption of Carlos, 413 Mass. 339, 348 (1992). "After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." Adoption of Nancy, 443 Mass. at 515. The judge's findings must be left undisturbed unless they are "clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
a. Change in the permanency plan. The mother stipulated to her unfitness at trial and is not challenging the finding of unfitness on appeal. Rather, she argues that the judge erred by terminating her parental rights because the department did not have a plan in place for the child beyond continued custody by the department. This argument, however, relies on events that took place posttrial. Prior to, and during trial, the plan for the child remained permanency through adoption with the child's foster parent, and the child resided in the preadoptive home at the time of trial. Any disruption in the child's placement occurred after trial and after the entry of the judge's finding of unfitness and the decree terminating the mother's parental rights. Accordingly, not only is the mother's argument factually incorrect in that there was an adoption plan in place at the time the judge terminated her parental rights, "but in the absence of extraordinary circumstances, not here present, the mother may not rely on posttrial changes in a proposed plan for the child to reopen the proceedings." Adoption of Scott, 59 Mass. App. Ct. 274, 277 & n.8 (2003). See Adoption of Willow, 433 Mass. 636, 644 n.8 (2001) ("To take into account information concerning posttrial events would diminish finality and efficiency, interests that are important in these proceedings"). Contrast Adoption of Terrence, 57 Mass. App. Ct. 832, 841 (2003) (remand required where preadoptive family was no longer available at time that judge ruled on posttermination visitation).
Regardless, the judge found that any change in the permanency plan did not affect her findings regarding the mother's unfitness and whether the mother's parental rights should be terminated. "Although a factor, the absence of imminent adoption prospects does not, by itself, invalidate a decision to terminate parental rights." Adoption of Jacques, 82 Mass. App. Ct. 601, 610 (2012). See Adoption of Scott, 59 Mass. App. Ct. at 278, quoting Adoption of Paula, 420 Mass. 716, 723 n.7 (1995) ("while a fully developed adoption plan is preferable, it 'is not an essential element of proof' in a petition brought under G. L. c. 210, § 3").
The mother's argument pertaining to the violation of her fundamental rights when the department failed to place the child with various family members is also without merit. After she gave birth, the mother proposed that the child be placed with either of two specific family members. At trial, however, she did not present such a plan to the judge. Rather, at the close of all the evidence, the mother's counsel simply asked for reunification. Accordingly, her argument that the judge failed to consider her alternative plan is waived. Atlas Tack Corp. v. DiMasi, 37 Mass. App. Ct. 66, 70 (1994) ("Ordinarily, a party is not entitled to present an argument on appeal on an issue not presented to the court below"). Moreover, at the time of the child's birth, the department determined that the child could not be placed with either of the proposed family members. Thus, where the department did initially evaluate the mother's proposals, and a plan for placement with the mother's family was not before the judge, we find no error.
b. Clear and convincing evidence supports termination. The record provides clear and convincing support for the judge's conclusion that termination of the mother's parental rights is in the child's best interests. The judge concluded that the mother's unfitness was likely to continue into the future, and the record shows that since the child's birth, the mother has failed to make any consistent and significant improvements to support reunification with the child. First, the mother failed to make any progress in her service plan. She did not attend parenting services, therapy, anger management classes, or substance abuse treatment; she also failed to undergo a second psychological evaluation, and never obtained suitable housing or a job. Second, the mother also failed to make an effort to visit with the child and develop a relationship with him. See Adoption of Jacques, 82 Mass. App. Ct. at 604-605 (affirming termination of mother's parental rights where mother was not in compliance with service plan tasks and failed to visit child). The mother attended few visits with the child and developed a pattern of not showing up to previously scheduled visits with the child, using the rainy weather as an excuse for one of her missed visits. During her incarceration in 2014, the department scheduled visits with the child at the mother's prison. On one occasion the mother was unable to attend a visit because the prison imposed restrictions on her due to her behavior. On another occasion, the mother missed a scheduled visit with the child because she was moved to a prison unit that did not allow visits.
As a result, the child was not affectionate toward the mother and did not refer to her as his "mom." See Adoption of Rhona, 63 Mass. App. Ct. 117, 122 (2005) (termination of parental rights affirmed where child did not have bond with her mother and father and only referred to them by their first names). Despite being responsible for missing these visits, the mother did not take any responsibility for why the visits did not occur. The mother also lacks the ability to understand and empathize with the child's emotional and developmental needs. The mother does not understand how this process affects the child or what she needs to have in order to care for the child. See id. (mother failed to attend to her daughter's emotional needs).
Accordingly, based on all the evidence, the judge's conclusion that termination would serve the best interests of the child constitutes neither an abuse of discretion nor a clear error of law.
2. Due process. Next, the mother argues that the judge violated her due process rights when the judge proceeded to trial without her being present. We disagree.
"Due process concerns and fundamental fairness require that a parent have an opportunity effectively to rebut adverse allegations concerning childrearing capabilities, especially in a proceeding that can terminate all legal parental rights." Adoption of Mary, 414 Mass. 705, 710 (1993). Although the mother was absent from the trial, she was represented by able counsel throughout the proceedings. Contrast Adoption of Jacqui, 80 Mass. App. Ct. 713, 718 (2011) (denial of due process resulted where father was incarcerated, received no notice of proceedings, and representation by counsel was "cursory").
At the beginning of the trial, the judge noted that the attempts to arrange for the mother to participate in the trial by video conferencing from Boston Juvenile Court had been unsuccessful.[4] The judge offered to allow the mother to participate in the trial by telephone, but the mother did not take advantage of that option. Thus, the mother had the opportunity to be heard in a meaningful manner. See Custody of Lori, 444 Mass. 316, 322 (2005). Compare Care & Protection of Orazio, 68 Mass. App. Ct. 213, 220 (2007). That she chose not to avail herself of the opportunity does not render the trial constitutionally invalid.
3. Visitation plan. Lastly, the mother argues that she should be able to visit with the child while the child awaits permanent placement. When determining whether to grant posttermination visitation, the judge must focus on the best interests of the child. See Adoption of Helen, 429 Mass. 856, 863 (1999). We discern no abuse of discretion in this case, particularly where the child has no relationship with the mother and does not recognize her as his mother due to the mother's lack of effort to visit with him. See Adoption of Vito, 431 Mass. 550, 562 (2000) ("order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation").
Decree affirmed.

The putative father's rights were also terminated; he did not file a notice of appeal.

The judge acknowledged the "financial burden [on the mother] to get from Boston to Worcester on public transportation."