## ADOPTION OF MARC.[1]

No. 00-P-50.

Bristol. June 7, 2000. - August 9, 2000.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Evidence,* Child custody proceeding. *Practice, Civil,* Relief from judgment. *Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption.

A Juvenile Court judge did not abuse his discretion in denying without a hearing a mother's motion for relief from a judgment dispensing with her consent to the adoption of her child, where no facts were in dispute and no purpose would have been served by an evidentiary hearing. [800-801]

PETITION filed in the New Bedford Division of the Juvenile Court Department on May 30, 1996.

The case was considered by *Ronald D. Harper,* J., and a motion for relief from judgment was heard by *Kenneth P. Nasif,* J.

*Jonathan D. White* for the mother.

*Deborah D. Wolf* for the child.

*Susan Paulson,* Assistant Attorney General, for the Department of Social Services.

GREENBERG, J. Marc's mother voluntarily placed him in foster care when he was five years old while she tried to overcome her drug addiction. After three years, she had not succeeded and agreed to a Juvenile Court decree dispensing with the need for her consent to Marc's adoption. Eleven more months passed, and she changed her mind. Asserting that she was clean and sober, the mother moved for relief from judgment. Her motion was denied, and she appeals.

At the time the decree dispensing with the mother's consent

---

[1] As is our custom, we use a pseudonym. Marc has a sister who also was freed for adoption, but the mother contests the decree only as to Marc. Marc's father does not appeal.

entered, the Juvenile Court judge found the following uncontested facts. Marc's mother suffered a difficult childhood and was placed in foster care twice herself. She began using drugs when she was nine or ten and quit high school in her junior year, later earning a GED. She had worked as a waitress, cashier, nurse's aide, and in retail, but never held any job longer than a few months. Admitting to heavy use of marijuana, cocaine, hallucinogens, heroin, and Klonopin (a prescription drug), she entered detoxification centers regularly, but was "always relapsing." Marc's father, whom she never married, used to beat her and was incarcerated after one incident in 1994 in which he nearly killed her. She moved back in with her foster mother, who tossed her out in short order when it became clear that she was still using drugs. The mother lived on the streets for a time, supporting herself by prostitution. Eventually she requested outpatient drug treatment, housing assistance, and foster placement for her children from the Department of Social Services (DSS). She signed voluntary placement agreements for the children from May, 1995, until May, 1996, but unswervingly conformed to her too familiar pattern: she embarked on and then quit various drug treatment programs nine times during that one year.

A care and protection petition was filed on May 30, 1996, and the Juvenile Court granted temporary custody to DSS on June 5, 1996. Although DSS scheduled visits for her, the mother admits that her visits were inconsistent; she arrived late or not at all. On one occasion, she showed signs of being under the influence, explaining to the social worker that it was just her medication making her drowsy. His mother's behavior led to frequent disappointments for Marc, and he began acting out and making suicidal statements. Both his regular therapist and a crisis counselor reported that Marc did not want to see his mother anymore. His regular therapist suggested that the mother try writing letters to Marc, but she never did.

The mother married in September of 1997, and began therapy with a new counselor. Random urine screens at that time showed marijuana use. In October, 1997, the mother told the social worker that she wished to sign adoption surrenders because she realized that would be in the children's best interest. That same month, all parties entered into a voluntary stipulation for judgment adjudicating the children in need of care and protection, dispensing with the need for the parents' consent to the

children's adoption, and agreeing that failure of the prospective parents to adopt would not result in revocation of the decrees. The decrees, accordingly, entered in December, 1997. In September of 1998, the mother filed a motion for relief from judgment as to Marc.[2] After a nonevidentiary hearing, the motion judge issued an order denying that motion.

In the instant appeal, the mother claims that the judge abused his discretion by denying her motion without holding an evidentiary hearing. For support, she relies on *Adoption of Theodore*, 36 Mass. App. Ct. 355 (1994). We have said before, however, that "*Adoption of Theodore* does not mandate an evidentiary hearing in every instance of a postjudgment motion in an adoption case." *Adoption of Nicole*, 40 Mass. App. Ct. 259, 264 (1996). Unlike the situation in *Theodore* where the mother's "skimpy" affidavit and the lack of stated reasoning by the judge made thoughtful and serious consideration of the mother's motion and the judge's decision impossible, *Adoption of Theodore*, *supra* at 358, here we have both a full affidavit and a full statement from the motion judge.

The mother, in support of her motion, filed an affidavit claiming two changes in circumstance: Marc's adoption by his preadoptive parents had fallen through, and the mother had achieved sobriety. Neither is grounds for revocation. As to the first, the mother herself had stipulated back in October of 1997 that the failure of the prospective parents to adopt would not result in revocation of the decree. No new information has come to light which would render that stipulation unfair. As to the second, DSS did not dispute the mother's sobriety at the hearing, and the judge ruled on her motion under the assumption that she was indeed now clean. In these circumstances, no purpose would have been served by an evidentiary hearing. See *Adoption of Gwendolyn*, 29 Mass. App. Ct. 130, 135 n.4 (1990) (with no facts in dispute, "further hearings would be futile").

"Decisive in the instant case is that, ultimately, resolution of motions for relief from judgment repose in the broad discretion

---

[2]Marc's counsel notes that the mother also had filed a motion for visitation that remains undecided. Marc did not join in the motion and, therefore, is not a party, see *Adoption of Helen*, 429 Mass. 856, 861 n.8 (1999) (child who did not seek hearing below lacks basis for appeal), and mother's counsel did not brief the issue. See Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975); *Budish* v. *Daniel*, 417 Mass. 574, 577 n.5 (1994). In any event, we cannot pass on a ruling that has yet to be made.

of the motion judge. An appellate court will not reverse the motion judge's decision 'except upon a showing of a clear abuse of discretion.' The standard is one of marked deference." *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 224 (1998) (citation omitted). There was no abuse of discretion.

*Order denying relief from judgment affirmed.*