# Adoption of John.[1]

No. 00-P-1506.

Middlesex. June 28, 2001. - December 20, 2001.

Present: Duffly, Kantrowitz, & McHugh, JJ.

*Adoption,* Dispensing with parent's consent, Visitation rights. *Minor,* Adoption. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Practice, Civil,* Findings by judge.

In an action seeking termination of parental rights and an adjudication that a child was in need of care and protection, an agreement entered into by a mother for judgment dispensing with the need for her consent to the adoption of her son was not invalid on the ground that the agreement did not meet the requirements of an irrevocable voluntary surrender for adoption, because nothing in the statutory scheme of G. L. c. 210 requires a parent involved in such an action who enters into such an agreement to do so in the form of a voluntary surrender. [433-434]

An agreement entered into by a mother for judgment dispensing with the need for her consent to the adoption of her son was made knowingly and voluntarily, where the record showed that the judge conducted an adequate inquiry, which was made a part of the agreement for judgment, into the mother's understanding of the decision she was making and the voluntary nature of her assent; the judge was not required to conduct a colloquy similar to that required in criminal cases to ascertain whether she had knowingly and intelligently waived her appellate rights. [434-436]

An agreement entered into by a mother for judgment dispensing with the need for her consent to the adoption of her son was not invalid on the ground that the judge did not find the mother unfit by clear and convincing evidence, where the judge made a finding that the decree was in the child's best interest and established that the mother's consent to the decree was voluntary and knowing, and where there was testimony to the effect that the mother was unable to assume parental responsibility for the child. [436-438]

In an action seeking termination of parental rights and an adjudication that a child was in need of care and protection, this court was uncertain whether the judge's order leaving postadoption visitation to the discretion of the adoptive parents reflected a determination that no significant bond existed between the child and his mother or whether the finding that it was in the child's best interests to continue to have contact reflected a determination that such a bond existed, and therefore remanded the case for further proceedings. [438-440]

---

[1]A pseudonym, as is Greg's name, below.

PETITION filed in the Lowell Division of the District Court Department on April 6, 1998.

After an agreement for judgment and stipulation was reached by the parties, the remaining issues were heard by *Paul C. Menton, J.*

*Deborah Sirotkin Butler* for the mother.

*Richard A. Salcedo* for Department of Social Services.

*William A. Comeau* for the child.

DUFFLY, J. The mother appeals from a decree entered pursuant to an agreement for judgment dispensing with the need for her consent to the adoption of her son John. She contends that the agreement, including the trial judge's inquiry as to whether her consent was knowing and voluntary, was insufficient to create a valid surrender of her parental rights, and that the judge's order regarding postadoption visitation requires clarification. We affirm the decree, but remand for further proceedings to address postadoption visitation.

The Department of Social Services (department) filed a care and protection petition, G. L. c. 119, § 24, on behalf of John (who was born September 20, 1993), and Greg[2] (who was born June 26, 1987), following the April, 1998, removal of the children from the mother's home on allegations that the mother was intoxicated and the father physically abusive.[3] Thereafter, the department notified both parents of its intent to request the entry of a decree pursuant to G. L. c. 210, § 3, dispensing with the need to provide notice of or obtain parental consent to the adoption of John.

Trial was conducted over a two-day period, on December 8 and December 15, 1999. After both parents had testified, but before trial had concluded, counsel for the parties reported to the judge that they had arrived at agreement that John would either be placed for adoption with his foster parents — the foster

---

[2]Greg remained the subject of care and protection proceedings until the parties reached agreement during the trial that they would cooperate to complete guardianship proceedings, pursuant to which Greg would become the ward of his paternal uncle and be placed in his custody, and the care and protection petition as to Greg would be dismissed. There is no appeal before us in connection with this agreement.

[3]The parents are not married to each other, but lived together until 1997. The father did not perfect his appeal.

father is his maternal uncle — or in the custody and guardianship of his paternal uncle. The trial judge questioned the mother as to her understanding of the terms of the agreement, and at the request of the trial judge, the parties then submitted the agreement in writing.[4]

Trial continued on issues not resolved by the parties' agreement: whether the plan proposed by the department (that John be adopted by his foster parents) or by the parents (that he be placed with his paternal uncle) was in John's best interests, and to the question of postadoption visitation. Thereafter, the Juvenile Court judge entered a decree that incorporated the terms of the parties' agreement. The decree ordered that John be adopted by his foster parents, and that postadoption visitation between John and his biological parents would be at the discretion of the adoptive parents. On appeal, the mother argues that her agreement was deficient because the stipulation did not meet the voluntary surrender requirements set forth in G. L. c. 210, § 2, or, in the alternative, because (1) the judge failed to establish that the mother's agreement was knowing and voluntary; (2) the judge did not find her unfit by clear and convincing evidence as required by G. L. c. 210, § 3; and (3) the judge's finding that postadoption contact was in John's best interests failed to support his order that postadoption visitation be left to the discretion of the adoptive parents.

1. *The agreement was knowing and voluntary.* The mother argues that her agreement to John's adoption was in the nature of an irrevocable voluntary surrender of the child for adoption within the meaning of G. L. c. 210, § 2, and that it is invalid because the requirements of that statute were not met.[5] Section 2 contemplates a consensual relinquishment of a child for

---

[4] At the conclusion of trial, the mother and father made a further oral stipulation that if placement of John was to be with the paternal uncle, it could be either pursuant to a permanent guardianship or adoption.

[5] The consent to adoption of a child pursuant to G. L. c. 210, § 2, (often referred to as a voluntary surrender) cannot be given until the fourth day following the child's birth and must be voluntarily given and in writing. Such written consent must "be attested and subscribed before a notary public in the presence of two competent witnesses." *Ibid.* The form of the consent is prescribed by the statute and must contain the following language: "I UNDERSTAND THAT THIS SURRENDER IS FINAL AND CANNOT BE REVOKED." *Ibid.*

adoption, irrespective of parental fitness. By contrast, c. 210, § 3, dispenses with the need for consent on a finding, based on a consideration of parental fitness and ability, that placement would be in the child's best interests.

Here, the agreement was for entry of judgment[6] in proceedings filed by the department seeking termination of parental rights pursuant to c. 210, § 3, and an adjudication that John was a child in need of care and protection proceeding pursuant to G. L. c. 119, §§ 24-26. There is nothing in the statutory scheme requiring a parent who enters into such an agreement to do so in the form of a voluntary surrender consistent with the requirements set forth in c. 210, § 2. The mother's reliance on *Adoption of Derrick*, 415 Mass. 439 (1993), is misplaced. The mother in that case signed a voluntary surrender pursuant to c. 210, § 2, in connection with which "[s]he independently, and without [the department's] involvement, sought the advice, guidance and opinion of numerous individuals." *Id.* at 441. Although the department had in that case filed a petition pursuant to c. 210, § 3, that matter did not go forward. The court observed that "the mother waived her right to have the court examine her parental fitness. . . . Because the mother consented to the adoption, the hearing [on the c. 210, § 3 petition] did not take place." *Id.* at 445.

The question, then, is not whether the mother is entitled to void her consent to the adoption because it failed to comply strictly with the requirements set forth in c. 210, § 2, but whether she had an adequate understanding of the consequences

---

[6] In the agreement, entitled "Agreement for Judgment; Stipulation," the parents acknowledge "that it is in [John's] best interest to be placed with [the paternal uncle] or [the maternal uncle]." The document further reflects the parents' preference that John be placed with the paternal uncle and that "[i]f [the trial] Court determines that it is in [John's] best interest to remain with [the maternal uncle] (and spouse), and if [they] are approved to adopt [John], [the parents] agree voluntarily to surrender their parental rights. . . . [I]t is agreed that the only issues remaining for trial are whether it is in [John's] best interest to be placed with [the paternal uncle] or with [the maternal uncle], and if with [the maternal uncle], to define the terms and conditions of a suitable open adoption agreement, if any." The agreement also contains provisions relative to Greg not here relevant. See note 2, *supra.*

of consenting to entry of judgment and whether she gave her consent freely.[7]

In this connection, the mother argues that the trial judge was required to conduct a colloquy similar to that required in criminal cases[8] to ascertain whether she had knowingly and intelligently waived her appellate rights. "We have . . . repeatedly rejected incorporating the full panoply of constitutional rights afforded criminal defendants into proceedings involving custody and termination of parental rights." *Adoption of Don*, 435 Mass. 158, 169 (2001). What is required is that the judge make an appropriate inquiry to establish that the parent's consent was knowing and voluntary. Cf. *Surrender of Minor Children*, 344 Mass. 230, 234 (1962), quoting from *Wyness* v. *Crowley*, 292 Mass. 461, 464 (1935) (in a case where the mother agreed to an adoption surrender during care and protection proceedings, the court held that "the rule is applicable which has been formulated for cases of voluntary assent of a parent to a specific adoption; if given 'with a full understanding of every fact necessary to such consent' it may be withdrawn only with the consent of the probate judge").

Here, the trial judge conducted an adequate inquiry, made part of the agreement for judgment, into the mother's under-

---

[7]Implicit in this question is whether a parent may consent to the entry of a c. 210, § 3, decree. The mother does not argue that such an agreement is prohibited, and we are aware of no principle of law or any decision of our courts that would preclude a parent from agreeing that the decree should enter. See, e.g. *Kalika* v. *Munro*, 323 Mass. 542 (1948) (a party may not disregard stipulation nor revoke it at will. "His consent, once made a part of the record, binds him until he is relieved from it by judicial action"); *Hoppe* v. *Haskins*, 29 Mass. App. Ct. 411, 415-416 (1990) (consent judgment in paternity action granting permanent guardianship and legal and physical custody of a child of the parties to a third person); *Adoption of Marc*, 49 Mass. App. Ct. 798, 799-800 (2000) (stipulation for judgment in care and protection and termination of parental rights proceeding). A number of factors could influence a parent to make this decision, including the recognition of an inability to parent, coupled with the realization that agreement might bring to a speedier conclusion a process that is often protracted, thereby giving the child a certain and stable future.

[8]In the context of a criminal proceeding, a "colloquy" includes that exchange between the judge and a defendant occurring in the context of a plea hearing that is intended to elicit whether the defendant's decision to plead guilty to a criminal charge was done voluntarily, knowingly, and intelligently. See, e.g., *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 203-204 (2000).

standing of the decision she was making and the voluntary nature of her assent. The mother informed the judge that she had not imbibed alcohol or drugs in the past twenty-four hours; had consulted with her attorney regarding the stipulation; and was willing to give up custody of John as long as he was placed either with the paternal uncle in Pennsylvania or the foster parents in Massachusetts, either by adoption or guardianship. She stated that she was aware of the significant rights she was giving up by entering into the agreement, in essence the right to have the issue of parental fitness determined, possibly in her favor, by proceeding with trial.[9] This was sufficient to establish that the mother had voluntarily and knowingly entered into the agreement.[10]

2. *Determination of parental unfitness.* The mother next contends that the judge did not find her unfit by clear and convincing evidence as required by G. L. c. 210, § 3. A trial judge presented with a parent's consent to entry of a c. 210, § 3, decree must fulfil a dual obligation: to the child, by determining that entry of such a decree is in that child's best interests; and to the parent, whose "private interest . . . is commanding," *Santosky* v. *Kramer*, 455 U.S. 745, 758 (1982), by determining that there is factual support for the termination of parental rights. The obligation to the parent ensures that the department's decision to proceed with a c. 210, § 3, petition was well founded. See *id.* at 754. See also *Petition of New England Home for Little Wanderers*, 367 Mass. 631, 642 (1975) ("A parent cannot be deprived unless some affirmative reason is shown for doing so . . ."). We think that, in the circumstances

---

[9] The mother had also been in court when testimony was given as to her unfitness and thus had an opportunity, before entering into the agreement, to hear evidence on which the department would seek to rely.

[10] We reject the mother's contention that the mother had no chance to "consult, reflect, or have any period for rational consideration." The record reflects that counsel reported to the judge during the first day of trial that they were discussing possible agreement as to John. When trial resumed, a week later, the parties reported that they had reached substantial agreement. The agreement was reduced to writing during a recess and then submitted to the court. These circumstances afforded sufficient opportunity for reflection. See, e.g., *Surrender of Minor Children*, 344 Mass. at 236 ("No statute has said that surrenders are valid only if executed free from emotion, tensions, and pressures caused by the situation").

of this case, the judge fulfilled this obligation and that a specific finding of unfitness is not required.

Decisions establishing that the evidence must be clear and convincing that a parent is currently unfit have arisen in the context of contested c. 210, § 3, proceedings. See, e.g., *Adoption of Inez*, 428 Mass. 717, 720 (1999). In that context, a judge is also required to make "specific and detailed findings demonstrating that close attention has been given to the evidence." *Adoption of Hugo*, 428 Mass. 219, 224 (1998). We have found no decision directing that, when a parent knowingly and voluntarily consents to the entry of a decree, there must be clear and convincing evidence of parental unfitness detailed in written findings. In *Adoption of Marc*, 49 Mass. App. Ct. 798, 799 (2000), where a mother agreed to the entry of a Juvenile Court decree that her children were in need of care and protection and dispensed with the need for her consent to her child's adoption, we noted that "the Juvenile Court judge found [certain] uncontested facts," including that she had admitted to a long-term, heavy use of drugs including marijuana, cocaine, and heroin, had sought out treatment, but had frequently relapsed. The challenge to the decree in that case was not on the basis of any inadequacy in the findings, and we thus had no occasion to pass directly on the claim raised by the mother here.

As noted above, a judge entering a decree dispensing with the need for parental consent to adoption must, as required by c. 210, § 3, determine that to do so is in the child's best interests, and this determination must be based, at least in part, on considerations of parental ability as set forth in c. 210, § 3(c). We do not, however, read into the statute a requirement that, when a parent has consented to entry of the decree, the judge must make a specific finding of unfitness. We conclude that a decree is properly entered in these circumstances, when (1) the judge has made findings that the decree is in the child's best interest; (2) inquiry by the trial judge establishes that parental consent to entry of the decree was voluntary and knowing; and

(3) there is a factual basis in the record[11] to support a finding that such parent's "ability, capacity, fitness and readiness . . . to assume parental responsibility," c. 210 § 3(c), is lacking.

The trial judge's findings reiterate the parties' agreement that it is in John's best interest to be adopted or placed under a guardianship. The judge found that John "has bonded with his foster parents and that it is in his best interest that he be placed with" them. In his order adopting the department's plan that John be adopted by his foster parents, the judge further found that the plan "is in the best interests of [John]." As we have previously discussed, the judge established that the mother's consent was knowing and voluntary. There was, in addition, testimony that the mother was currently unable to assume parental responsibility for John, with exhibits admitted in evidence providing additional, or corroborating, evidence.[12] In these circumstances, entry of the decree was proper.

3. *Postadoption visitation.* The mother argues that the judge erred in leaving postadoption visitation to the discretion of the adoptive parents and that, because the findings supporting this order were inadequate, the matter must be remanded for further proceedings. We agree.

---

[11]Here, that factual basis was presented through testimony and exhibits. In other cases, that factual basis might be established in other ways.

[12]On the basis of this evidence, the judge could have found that the mother neglected John's needs. John was not bathed regularly in his parent's care. When John arrived at the home of the foster parents, his immunizations were not up to date, he had five cavities, and he needed corrective eyeglasses. He could not count past four, and he did not know the alphabet or the colors. John's life with his parents was marked by domestic violence. The father was physically abusive to the mother throughout the relationship, including in front of the children.

The mother abused alcohol and drugs. She began drinking alcohol in 1990, and drank from one to two six-packs of beer a day in the presence of Greg and John; she has been intoxicated while the children were in her care. She also used cocaine and marijuana regularly, including when the children were present. In March, 1998, the mother left the children with a friend, and after three days had failed to return to pick them up.

The mother failed to follow through with her service plan. She agreed to attend counseling to learn the effects of drug and physical abuse on children, but stopped counseling when she began working. She failed to submit one month of clean urine samples; tested positive for marijuana in June, 1999, and for cocaine in July, 1999; and did not attend AA or NA meetings for the requisite two to three times a week.

Once it is established that a parent is unfit, the decision whether to grant postadoption visits must be left to the sound discretion of the trial judge. See *Youmans* v. *Ramos*, 429 Mass. 774, 783 (1999); *Adoption of Nicole*, 40 Mass. App. Ct. 259, 264 (1996). That discretion is not, however, unfettered, but must be "grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation." *Adoption of Vito*, 431 Mass. 550, 562 (2000). A judge may order that no postadoption visitation take place, or "may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child." *Id.* at 553. An order for postadoption visitation is not warranted in the absence of a finding that a significant bond exists between the child and a biological parent and "that continued contact is currently in the best interests of the child." *Id.* at 563-564. When a trial judge decides not to order visitation, however, he is not required to make extensive findings if he has already made specific and detailed findings regarding the child's best interests and the determination of parental unfitness. See *Adoption of Gregory*, 434 Mass. 117, 129 (2001) (judge did not order postadoption visits and left future contact left to discretion of adoptive parents where she found that "continued contact did not seem to be in [the child's] best interest" and that the child "ha[d] no bond with either biological parent, and [did] not even appear to recognize them as his parents").

The judge's only finding on the issue of visitation here was "that it is in the best interests of [John] to continue to have contact with his biological mother and father provided, however, that such contact is beneficial to [John] and that this is to be determined by the foster parents with assisted professional advice. It is the Court's desire that contact remain; however, it is in the discretion of the adopting parents whether to continue contact." We are unable to conclude whether the judge's order leaving visitation in the discretion of the adoptive parents reflects a determination that no significant bond exists between John and his mother or whether, to the contrary, the finding that

it was in John's best interests "to continue to have contact" reflects a determination that such a bond exists, warranting an order for postadoption contact. The issue was put before the judge and he was thus required to make a determination. We therefore remand the matter to the Juvenile Court for further proceedings in regard to postadoption visitation. In all other respects, the decree is affirmed.

*So ordered.*