After a trial, a judge of the Juvenile Court found the father unfit to parent the children, terminated the father's parental rights, and approved the adoption plans of the Department of Children and Families (DCF). The father appeals.[3] We affirm.
Background. We summarize the relevant facts and procedural history from the judge's findings, reserving some details for discussion of the issues. Tatum was born in 2011, and Brian was born in 2012. DCF filed a care and protection petition in October, 2015, after investigating a report filed pursuant to G. L. c. 119, § 51A, alleging domestic violence between the father and mother in the children's presence. Both children were removed from the parents' custody and placed in the temporary custody of DCF. DCF reunified the children with the parents in August, 2016. In October, 2016, DCF again removed the children due to domestic violence. After a trial in February, 2017, the judge concluded that both parents were unfit and issed decrees terminating both parents' parental rights. The judge declined to order posttermination and postadoption visitation.
Discussion. 1. Adverse inference. The father did not appear at the trial. Counsel represented that the father telephoned him the morning of trial and was having trouble with his transportation to court. The father argues that the judge abused her discretion by drawing an adverse inference against the father as a result of his absence from the trial. A negative inference is permissible when a parent who had notice of a proceeding to determine his parental rights fails to attend so long as the inference is "fair and reasonable based on all the circumstances and evidence." Adoption of Talik, 92 Mass. App. Ct. 367, 372 (2017) (quotation omitted). Such an inference may suggest an abandonment of parental rights or that the parent cannot meet the children's best interests. Ibid.
Here, the judge considered the father's explanation of his failure to attend, but was not obligated to credit it. At the time of trial, the father had not visited the children for over two months, and met with his social worker only once after the children were removed for the second time. The judge could permissibly conclude from the father's course of conduct that his repeated absences were due not to insufficient means of transportation but rather to neglect. The judge did not abuse her discretion by drawing a negative inference against the father for his failure to appear and testify.
2. Termination of parental rights. The father further argues that the judge abused her discretion in terminating the father's parental rights by relying on erroneous findings that the father had untreated anger management issues and refused to address his substance use problems while failing to acknowledge the father's positive facts. A judge must find, by clear and convincing evidence, that the parent is currently unfit to care for the child and that termination is in the child's best interests. See Adoption of Nancy, 443 Mass. 512, 514-515 (2005). In reviewing a judge's decision to terminate parental rights, we give the judge's decision substantial deference "and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). There is an abuse of discretion where "the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).
The judge properly considered the required factors set forth in G. L. c. 210, § 3(c ), and concluded that factors ii, iii, iv, v, vi, viii, x, and xii were applicable to her determination that the father was unfit. The judge found that the father failed to demonstrate consistent effort to follow the tasks on his DCF service plan. The judge further found that while the father did engage in psychiatric treatment and individual therapy, he failed to engage sufficiently in services designed to correct the circumstances that led to the children's removal, such as domestic violence services and substance use treatment. The judge also found a history of the father's failure to visit the children after their removal. Based on the record, we cannot conclude that the judge's findings are clearly erroneous. See Adoption of Ilona, supra. Although the father disputes the judge's weighing of the evidence and credibility determinations, "[w]e see no basis for disturbing the judge's view of the evidence." Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).
3. Posttermination and postadoption visitation. The father argues that the judge abused her discretion in failing to order posttermination and postadoption visitation between the father and the children. Once a parent is established as unfit, the decision whether to order posttermination and postadoption visits is left to the judge's discretion. Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). The decision is based on the best interests of the children and on the "emotional bonding and other circumstances of the actual personal relationship of the child[ren] and the biological parent." Adoption of Vito, 431 Mass. 550, 562 (2000).
The record supports the judge's conclusion that no such bond existed between the father and the children. The father had not visited with the children for over two months before trial. Further, the children were affected by the pattern of domestic violence between the father and mother and were made sad and scared by the violence. The judge did not abuse her discretion in declining to order posttermination and postadoption visitation.
Decrees affirmed.

The mother's rights also were terminated. She did not appeal.