NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-763

ADOPTION OF RAMSEY (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from decrees by a judge of the Juvenile Court terminating her parental rights to her son, Ramsey, and her daughter, Amy.[2] She does not challenge the judge's finding of unfitness, nor does she contest the termination of her parental rights. She argues only that the judge abused her discretion in not ordering posttermination and postadoption visitation, and that some of the judge's findings of fact on this point were clearly erroneous. We affirm.

Background. We summarize only those facts relevant to the issue presented on appeal. In January 2020, after several months of involvement with the mother and father stemming from, among other things, incidences of domestic violence within the family and concerns about the mother's mental health and

---

[1] Adoption of Amy. The children's names are pseudonyms.

[2] The father did not join in the mother's appeal and is not a party to these proceedings.

substance misuse, the Department of Children and Families (department) obtained emergency custody of Ramsey and Amy. The following day, the department filed a care and protection petition pursuant to G. L. c. 119, § 24, on behalf of both children. Ramsey was sixteen months old, and Amy was one month old at that time. The department was awarded temporary custody and retained custody through trial.

Initially, the department, intending to unify the children with the mother, provided the mother with weekly visitation. From January 2020 through March 12, 2020, the visits went well with the mother, who brought the necessary supplies and appropriate snacks. The visits were virtual from March through July 2020 as a result of the COVID-19 pandemic. When in-person visits resumed on July 28, 2020, mother continued to be engaged. Visitation was expanded to include unsupervised visits in November of 2020, and then to overnight visits in December of 2020. These visits went relatively well, but in April 2021, visitation was decreased to one-hour supervised weekly visits due to recurring incidents of domestic violence resulting in mother's arrest on several occasions. In addition, the mother failed to participate in mental health services as required by her action plan. From July 2021 until the date of trial, the mother cancelled approximately one-half of her scheduled visits.

A trial was held on November 4, 2021. The mother, who had an outstanding warrant for assault and battery on a family or household member, did not appear, and the judge drew a negative inference against her. At the conclusion of the trial, the judge found that the children were in need of care and protection, terminated the mother and the father's parental rights, and dispensed with the need for parental consent to adoption. The judge also found that posttermination or postadoption visitation or contact would not be in the children's best interests because there was no significant, existing bond between them and the mother. Specifically, the judge explained:

> "[Ramsey] was one and a half years old when he was removed from Mother's care. [Amy] was only three weeks old at the time of removal. Both children have now spent more time living apart from Mother than with her. Despite consistent visitation between Mother and the children for much of this case, Mother continues to engage in behaviors including domestic violence and substance use that inhibit the formation of a healthy bond with the subject children. Prior to July 2020, Mother was engaged with the children during the visits. After July 2020, there is nothing to demonstrate to show that she did anything beyond merely attending the visits. Mother did not testify and did not submit evidence indicating positive interactions during the visits. Mother did not offer, for example, anything to indicate [that] she and the children have a bond."

In reaching her conclusion, the judge also considered the fact that there was nothing to suggest that the children's foster parents, with whom they had spent the majority of their lives, would not facilitate visitation between the children and mother.

3

Discussion. The mother argues that the judge abused her discretion by not ordering posttermination and postadoption visitation. She asserts that the judge's finding that there was no evidence of a significant bond between her and the children was clearly erroneous, that the judge erred in finding that her behaviors inhibited the formation of a healthy bond with the children, and that the judge's consideration of the foster family's willingness to facilitate visitation was clear error.

As an initial matter, the department and the children argue that the mother has waived the issue of posttermination and postadoption visitation because she failed to request such visitation at trial. In response, the mother claims that the entry of an order for posttermination and postadoption visitation is always within the court's equitable authority, and therefore no additional notice is required to preserve the issue for appeal. Although we are inclined to agree with the department and the children that the issue is waived, see Adoption of Gregory, 434 Mass. 117, 129 (2001), we need not resolve this issue because we discern no abuse of discretion in the judge's decision.

Once it is established that a parent is unfit, the decision whether to grant posttermination or postadoption visitation is left to the sound discretion of the trial judge. See Adoption of John, 53 Mass. App. Ct. 431, 439 (2001). The decision must

4

be grounded in the best interests of the child.  See Adoption of Terrance, 57 Mass. App. Ct. 832, 839 (2003).  An order for posttermination or postadoption visitation is not warranted in the absence of a finding that a significant bond exists between the child and a biological parent and that continued contact is currently in the best interests of the child.  See Adoption of Vito, 431 Mass. 550, 563-564 (2000).

The judge did not abuse her discretion or rely on clearly erroneous findings to reach her conclusion.  As the judge noted, at the time of trial Ramsey had not lived with the mother since he was sixteen months old, and Amy had not lived with the mother since she was three weeks old.  Although many of the visits between the mother and the children were successful at first, later, as the judge observed, "Mother continue[d] to engage in behaviors including domestic violence and substance use," and "there is nothing to demonstrate . . . that she did anything beyond merely attending the visits" after July 2020.

The mother argues that the judge's finding that there was no evidence of positive engagement by the mother during visits after July 2020 was arbitrary and clearly erroneous.  At oral argument, counsel for the children conceded that this date may have been a scrivener's error and that the judge may have intended to write "July 2021."  This may be so, but any potential error in the date is not dispositive.  Contrary to the

5

mother's assertion, the record fully supports the judge's finding that at the time of trial there was no evidence of positive engagement. As previously noted, by April 2021, the mother's visits were significantly reduced because she had disengaged from all services and had been arrested for assault and battery on a family member and malicious destruction of property.

The mother also argues that the judge erred in finding that her "behaviors," including domestic violence and substance use, were inhibiting the formation of a healthy bond with her children. She argues that it was improper for the judge to consider the impact of these behaviors on the bond between her and the children absent any expert testimony or other corroborating evidence.

We are not persuaded. The judge could properly consider, as she did, the effects of domestic violence and the mother's substance use on her ability to form a bond with the children. For example, in April 2021, the mother's visits were decreased from overnight visitation to one-hour supervised visitation "due to Mother's continued involvement in domestic disputes with Father, due to Mother's medication issues, and her discharge from all mental health services." Then, from July 2021 to the date of trial, the mother cancelled eight of her seventeen scheduled visits. On the basis of these facts, it was

6

reasonable to conclude that the mother's behavior was preventing her from establishing a positive relationship with her children. See Vito, 431 Mass. at 562 (orders for postadoption visitation are "based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent").

Finally, the mother argues that the judge erred in considering the foster parents' willingness to facilitate posttermination visitation. The judge found that the "[m]other likewise presented no evidence to indicate that the current foster home is unable or unwilling to facilitate visits in the best interests of the subject children such that they should not be given discretion to determine post-termination contact." The mother argues that, since the foster parents were not designated as a preadoptive resource, the judge should not have considered their position on visitation.

In support of her position, the mother cites Adoption of Rico, 453 Mass. 749, 754 (2009), in which the Supreme Judicial Court stated that "an order for postadoption contact is more likely 'where no preadoptive family has yet been identified, and where a principal, if not the only parent-child relationship in the child's life remains with the biological parent.'" Id., quoting Adoption of Vito, 431 Mass. at 564. However, Adoption of Rico states only that postadoption visitation is more likely

where there is no identified preadoptive family, not that it is mandatory. Adoption of Rico, supra. Here, the judge's decision was grounded in the best interests of the children, and her consideration of the foster parents' position was only one factor in the calculus. We discern no error in these circumstances.

Decrees affirmed.

By the Court (Vuono, Sullivan & Singh, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered: March 28, 2023.

---

[3] The panelists are listed in order of seniority.