NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-133

ADOPTION OF TANYA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Juvenile Court judge found the mother and the father unfit to parent their children, terminated their parental rights, and dispensed with the need for parental consent to adoption.  With leave of a single justice of this court, the father and the children filed a motion seeking relief from the decrees, as amended, which was denied.  In these consolidated appeals from the decrees and from the order denying relief, the mother and the children challenge the judge's finding that the mother was unfit, contending that it is not supported by clear and convincing evidence.  The mother also argues that the judge erred because she should have been given additional time to demonstrate fitness after her home plan in Mississippi was denied.  The father and the children separately

---

[1] Adoption of Devin.  The children's names are pseudonyms.

argue that the judge erred in not holding an evidentiary hearing and in denying the motion for relief pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974). Finally, the children contend, among other things, that the judge erred in relying on the denial of the Interstate Compact on the Placement of Children (ICPC) placements because they had no meaningful opportunity to appeal that decision and were therefore deprived of the right to counsel. We affirm.

Background. The mother was in the custody of the Department of Children and Families (department) from age twelve to eighteen. In 2006, when the mother was eighteen and the father was forty-two, they began an eleven-year relationship. At the time, both the mother and the father were addicted to crack cocaine and the mother was homeless. The father allowed the mother to stay with him in a rented room above a bar. Later in the relationship, the mother obtained section 8 housing, and the father, who was then homeless, moved in with the mother. In 2013, their daughter, Tanya, was born, and their son, Devin, was born almost two years later.

The mother and the father's relationship was marred by substance abuse, untreated mental health issues, and turmoil. Both before and after giving birth to Tanya, the mother allowed numerous homeless people to stay in their home, which was a constant source of tension with the father. In 2018, the mother

2

ended her relationship with the father due to the father's substance abuse. Soon after separating from the father, the mother married a person who had been in the department's custody as a child and who also suffered from a substance abuse disorder and mental health issues (stepfather). The mother continued to allow other homeless people to stay at her home while married to the stepfather, and the police responded several times to the mother's home for disturbances.

In addition to her struggles with housing and substance abuse, the mother has never had stable long-term employment. The mother also suffers from significant mental health issues and has been diagnosed with bipolar disorder, posttraumatic stress disorder, anxiety, and depression. Even though the mother has been hospitalized on several occasions, including for an overdose and attempted suicide, she has not consistently engaged in mental health treatment. Similarly, the mother has had a lengthy substance misuse history including the use of crack cocaine and Percocet but has admittedly never engaged in substance abuse treatment.[2] Instead of attending a treatment program, the mother sought religion.

---

[2] The mother also has a criminal history spanning twelve years including charges of sexual conduct for a fee, possession of controlled substances, larceny, and being a common night walker and has been sentenced to the house of correction.

3

The father has been employed seasonally as a paver for the past thirty-one years as of the date of trial. The father's substance abuse history spans over thirty years with his longest period of sobriety being four years in the 1990s. The father admitted that his substance abuse caused the failure of his past relationships. The father's criminal history spans over forty years, and he has been the subject of restraining orders issued for the protection of the mother and other women.

In October 2018, Tanya, then five years old, was treated in the emergency room at Morton Hospital suffering from extreme agitation. The mother reported to hospital staff that Tanya had become increasingly angry over the past month. When the stepfather entered Tanya's hospital room, Tanya became increasingly agitated, but the mother insisted that he stay. Hospital staff filed a G. L. c. 119, § 51A, report (51A report), alleging neglect of Tanya by the mother and the stepfather.[3] The next day, while still at the hospital, Tanya disclosed that she had been sexually abused, and another 51A report was filed. During the investigation, the mother reported that Tanya's behavioral issues began after the father moved out and coincided, as the judge found, with the stepfather moving into

---

[3] The mother and the father had been the subject of prior 51A and G. L. c. 119, § 51B, reports and investigations. Those allegations of neglect were not supported.

4

the home.  The reports of neglect and sexual abuse were not supported by the department.  Tanya was hospitalized for the treatment of her behavioral issues and anxiety, and on several subsequent occasions for vision, neurological, and autoimmune conditions.

In November 2018, a neighbor filed a 51A report alleging neglect of the children by the mother and the stepfather, and reported that the children were locked in their rooms for extended periods of time yelling and screaming while the mother used crack cocaine and the stepfather used fentanyl.  The department investigated and found that Devin often arrived at daycare without diapers, clothes, and supplies, and, at times, arrived at daycare unclean and smelling of urine.  Tanya often arrived at school with dirty hair and clothes and without her backpack or folder.  On December 18, 2018, the department supported the neighbor's allegations of neglect of the children.

On December 19, 2018, school personnel filed two 51A reports alleging neglect of Tanya by the mother and sexual abuse of her by the stepfather, prompting the department to file this care and protection petition of behalf of both children.  When the department arrived at the mother's home to take temporary custody, the home smelled of urine, clothing was strewn all over, and Devin smelled of urine and was dirty.  During the investigation, the mother told the department that Tanya's

5

allegations of sexual abuse were "lies."  The mother also told the department that the stepfather did not live in her home, which was later discredited by the judge.

After the children were removed, action plans were created for each parent, which included attending parenting classes, mental health services, substance abuse services, and domestic violence services.  The action plans also sought to address both the mother and the father's housing instability.  Neither parent, however, was able to successfully complete much of what the plans hoped to accomplish.  After the removal of the children, for example, the father continued to suffer with substance abuse and, often as a result, missed meetings with the department, was inconsistent with visiting and staying in contact with the children, had no contact with the department between April and September of 2019, and again did not maintain contact with the department for several months in 2021 and 2022. The father admitted that he did not want to meet with the department or his children when he relapsed, as he did in July 2019.  He further admitted, and the judge found, that his use of substances was "linked to his mental health" and that he turns to substances to deal with problems and bad news.  The father's housing instability also continued after the children were removed, and he resided at a residential treatment program that could not accommodate children at the time of trial.

6

The mother also continued to struggle with many of the same issues as she did at the time of the removal of the children. She was homeless for long periods of time between removal and the trial. At the time of trial, the mother was behind in paying her utilities and other bills in Mississippi.[4] The mother relapsed on crack cocaine, missed numerous visits with the children, and her mental health continued to deteriorate as evidenced by the fact that police responded six times to her home for mental health concerns at a time when she was not engaged in mental health services. In Mississippi, the mother continued to make poor choices about her partners as well as the individuals she allowed into her home. Her untreated mental health issues and instability were also evident at trial, as demonstrated by her behavior in the court room, refusing to answer some questions and leaving the courtroom during a social worker's testimony.

Discussion. 1. Unfitness and the termination of the mother's parental rights.[5] "In deciding whether to terminate a

_____

[4] After the mother moved to Mississippi in March 2022, the department submitted two ICPC referrals to the State of Mississippi, but after a home study, the requests for placement of the children were denied based in part on concerns about the stability of her sobriety, failure to engage consistently with an individual therapist, and lack of local supports.

[5] No issue regarding the father's fitness as of the time of trial is properly before us, as the father did not oppose or

parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit, and, if so, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Patty, 489 Mass. 630, 637 (2022), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). See Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). "While a decision of unfitness must be supported by clear and convincing evidence, . . . a judge's findings will be disturbed only if they are clearly erroneous." Adoption of Paula, 420 Mass. 716, 729 (1995). "A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation and citation omitted). Adoption of Rhona, 57 Mass. App. Ct. 479, 482 (2003). "We give substantial deference to the judge's findings of fact and decision, and will reverse only 'where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, supra at 59.

Parental unfitness is "determined by taking into consideration a parent's character, temperament, conduct, and

_____

appeal from the unfitness finding, and the father has not briefed that issue on appeal.

8

capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). Given that the termination of parental rights is an "extreme step," a judge must decide whether the parent is currently unfit and whether, "on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary" (quotations and citations omitted). Adoption of Ilona, 459 Mass. at 59.

To start, to the extent that mother contends that some of the judge's subsidiary findings of fact are clearly erroneous, we note that the judge made extensive and comprehensive findings supporting her determination that the mother was unfit to parent the children. Even if we were to agree with the mother that a few of the judge's subsidiary findings were clearly erroneous,[6] the record as a whole amply supports the judge's ultimate conclusion of parental unfitness. See Adoption of Helen, 429 Mass. 856, 859-860 (1999).

Turning to the mother's specific claims of error, the mother argues that because she owns a trailer in Mississippi, the judge's conclusion that the mother's "housing instability is

---

[6] For example, the mother correctly points out that the judge's finding that she had claimed to have obtained an associate's degree was clearly erroneous; the mother testified that she "almost" had obtained two of them.

9

longstanding and contributes to [her] parental unfitness" was unsupported by the evidence. There was no error. The judge was entitled to factor in the mother's struggles throughout most of the proceedings with homelessness, her struggles to stay current on her bills, as well as the effect her substance abuse had on her ability to keep cash on hand and keep current on said bills in assessing this factor against the mother. See Adoption of Helen, 429 Mass. at 860 n.7 (judge's assessment of weight to give mother's progress entitled to deference). See also Adoption of Jacques, 82 Mass. App. Ct. 601, 607 (2012), quoting Adoption of George, 27 Mass. App. Ct. 265, 268 (1989) (while "stale information cannot be the basis of a finding of current parental unfitness . . . [p]rior history . . . has prognostic value").

We discern no error or reliance on stale information in the judge's conclusion that the mother's "refusal to terminate her relationship [with the stepfather] contributed to the children remaining in [the department's] care." The mother's contention that she "extricated herself from her relationship with [the stepfather]" is contrary to the judge's findings. A judgment dismissing the mother's divorce petition was issued in late December 2022, one month before the trial, and, as the judge noted, the mother remained legally married to him.

10

The mother also argues that the judge erred by relying on stale evidence about her substance use disorder, which she claims was under control by March 2022. The judge did not, however, credit the mother's testimony that she had been sober since March 2022 or that she was regularly attending Narcotics Anonymous (NA) meetings as required by her action plan. And given the evidence to the contrary, including her failure to engage in two toxicology screens in any given month as promised, her failure to appear at numerous appointments, her failure to participate in outpatient treatment to verify her sobriety as requested by the department, and her conflicting testimony about her attendance at NA along with lack of any recent documentation verifying her attendance, the judge's finding that substance abuse remained an issue for her was well-supported. See Custody of Eleanor, 414 Mass. 795, 799 (1993) (judge's assessment of credibility of witnesses is entitled to deference).

We conclude that the judge's ultimate finding of unfitness is supported by the record. In finding the mother currently and indefinitely unfit, the judge relied on several appropriate factors and considered them in the context of the children's particular needs. The judge relied primarily upon the mother's substance use disorder and mental health issues, "which prevent[ed] [her] from providing continuous care to the[] children," from attending visitation to the detriment of her

children, and from being a "consistent force[]" in the children's lives.[7]  The years of substance abuse by the mother resulted in the neglect of the children while in her care, as the children were often unclean, smelled of urine, and were sent to daycare and school without necessary supplies.  See Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) (evidence of parent's failure to keep stable home life for children and maintain visitation schedules are "relevant to the determination of unfitness").  The judge also relied on the mother's inability to keep her own appointments and her inconsistency in services to find that the mother would likely not be able to schedule and maintain the numerous services necessary to care for the special needs of the children in the future.  The evidence amply supported the judge's conclusion that the mother's character, temperament, and capacity inhibited her from assuming parental responsibility that would further the children's best interests.

The mother also claims that the judge improperly rejected most of her testimony and evidence without explanation.  She also takes issue with the judge's failure to discredit the testimony of a department social worker despite its

_____

[7] These findings demonstrate that, contrary to the mother's argument, the judge made the necessary findings concerning the nexus between the mother's shortcomings and harm to the children.

12

inaccuracies.  We are not persuaded, as these arguments "amount to no more than a disagreement with the judge's weighing of the evidence and credibility determinations regarding witnesses." Adoption of Don, 435 Mass. 158, 166 (2001).

In any event, contrary to the mother's claim, the judge did not ignore evidence favorable to the mother.  The judge acknowledged that the mother had engaged in some treatment including, at times, attending individual and weekly therapy sessions.  Unfortunately, the mother was not consistent in her attendance.  Also, despite a self-reported sobriety date of 2019, the mother was arraigned on a charge of possession of a class B substance in 2020, and she admitted to marijuana use while pregnant in 2020.  The mother also admitted to purchasing Vicodin and Percocet "off the streets" in 2021, using crack cocaine in 2021, and using substances in 2022.

The judge fairly considered what the mother had accomplished, but also fairly considered what the mother had failed to accomplish.  "Even where a parent has participated in programs and services and demonstrated some improvement, we rely on the trial judge to weigh the evidence in order to determine whether there is a sufficient likelihood that the parent's unfitness is temporary." Adoption of Ilona, 459 Mass. at 59-60. See Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019) (parent's failure to benefit from services is "relevant to the

13

determination of unfitness" [citation omitted]).  The judge did not err in concluding that the mother's failure to engage in and complete treatment for the very issues that resulted in her separation from her children supported the conclusion that the children would be subjected to the risk of abuse and neglect if they were reunited with the mother.  The evidence was clear and convincing and amply supported the judge's determination that the mother was unfit to parent the children and that her unfitness was not temporary.

We also discern no clear error in the judge's determination, supported by clear and convincing evidence, that the termination of the mother's parental rights was in the best interests of the children.  The judge made numerous findings, the vast majority of which are uncontested, describing the children's environment when the mother was their primary caregiver as including -- a minimally clean home and dirty, unkempt children and parents; the presence of unfamiliar homeless persons in the home; inconsistent attention to the children's services; and the mother sending the children to school without necessary supplies and being unavailable to collaterals.  All of these conditions culminated in neglect of the children, and the mother failed to meaningfully engage in the department's plan to address her deficiencies.  The judge evaluated the provisions of G. L. c. 210, § 3 (c), and found

factors (ii), (iii), (iv), (vi), (vii), (viii), (x), and (xii), to be applicable. The record supports the determination that termination of the mother's parental rights was in the children's best interests.

2. Additional time. The mother also argues that the termination of her parental rights was premature, as she should have been given additional time to work with the department after receiving notice that the Mississippi Department of Child Protective Services had denied placement. We are not persuaded. To start, the judge granted three motions to continue the trial submitted by the mother; the third continuance granted in May 2022 was based on the pending ICPC. After the denial of the ICPC placement requests, the judge continued the trial again in November 2022 on the motion of the father, resulting in additional time for mother to establish herself in Mississippi. The mother cites no authority that would have required the judge, sua sponte, to give her additional time to engage in services in Mississippi or to establish deeper ties in the community. We find no support in the law for the proposition that a parent is entitled to additional time to engage in services after the judge has appropriately concluded that the parent's unfitness is not temporary. We therefore see no abuse of discretion.

15

3.  Claims that the decrees and the rule 60 (b) order are void.  On appeal, the children claim that the judge should have found that the amended decrees are void because the children's due process and other legal rights were violated where, among other things, they were unable to challenge the denial of the adverse ICPC placement decisions pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), and were denied the right to appointed counsel in Mississippi to mount a challenge.  These arguments are not properly before us for two reasons.  First, these arguments were raised before the single justice, and she did not give the children, or the parents leave to seek relief in the Juvenile Court on this basis.  Second, the children did not raise these issues with the trial judge before the decrees entered.  See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 73-74 (2001); Adoption of Larry, 434 Mass. 456, 470 (2001).  In any event, the children and the parents, each represented separately by appointed counsel, had the full opportunity to challenge the "flawed" home study, the process, and the adverse placement decisions at the best interests trial.[8] There was no error in the judge's conclusion that the amended

_____

[8] We also note that the ICPC decisions were just one factor among many relied upon in finding the mother unfit and terminating her parental rights.

16

decrees were not void and, therefore, there was no basis to conclude that the rule 60 (b) order was void.

4. Motion to vacate decrees. While the direct appeal of the decrees was pending, the father, the mother, and the children moved jointly to stay the appeal and for leave to file a motion for relief from judgment. A single justice of this court allowed the motion, but "limited solely to the issue of whether the father's current circumstances justify relief from the decree." After a nonevidentiary hearing, the same Juvenile Court judge that presided over the trial denied the motion. The father and the children now appeal from the order denying the rule 60 (b) motion.

We review the denial of a motion for relief from judgment "for a clear abuse of discretion" (citation omitted). Adoption of Quan, 470 Mass. 1013, 1014 (2014). Rule 60(b) allows for relief from a final judgment or decree "only in extraordinary circumstances." Care & Protection of Georgette, 54 Mass. App. Ct. 778, 788 (2002), S.C., 439 Mass. 28 (2003). The judge has substantial discretion in deciding a rule 60 (b) (6) motion, including whether to hold an evidentiary hearing.[9] See id. at 787.

_____

[9] We discern no abuse of discretion or error in the judge's decision not to hold an evidentiary hearing here. The single justice gave the judge discretion "to hold whatever proceedings

17

Here, the judge's extensive factual findings and conclusions of law issued in support of the original decrees, which she continued to stand by, coupled with the judge's reasoning in her decision on the motion to vacate, provide an adequate basis for the judge's decision that the father did not establish the required post-trial "extraordinary circumstances" warranting relief from the decrees. The father and the children have not met their burden of showing that the motion judge -- the same judge who presided over the care and protection proceedings and the trial terminating his parental rights -- committed a clear abuse of discretion in denying the motion.

First, the judge did not abuse her discretion in finding that relief from the decrees was not warranted because of the father's continued sobriety (a period covering, by the father's account, at most two years at the time the rule 60 [b] motion was filed). The judge noted in her original findings that the father has had a substance use disorder for over thirty years. On several occasions, the father stopped using substances (on

_____

deemed necessary to decide the motion." As the father concedes, an evidentiary hearing was not required. See Adoption of Marc, 49 Mass. App. Ct. 798, 800 (2000). The judge's decision on the rule 60 (b) motion, moreover, demonstrates that she considered and credited the evidence of many improvements documented in the father's affidavit, negative drug screens, and letters from the father's therapist, sponsor, and residential treatment program, but nevertheless found the evidence inadequate to show material changes rising to the level of extraordinary circumstances that would justify relief.

18

one occasion in the 1990s for a four-year period), but he always relapsed. His substance abuse, which is linked to his mental health, prevented him from having any contact with the children for lengthy periods. The judge could reasonably have inferred that the father's consistent history of relapsing had prognostic value. See Adoption of Jacques, 82 Mass. App. Ct. at 607-608. Additionally, the father's substance abuse was not the sole reason for the finding of unfitness and the termination of his parental rights. The father's failure to treat his mental health consistently was an important factor as well. To the extent the father argues that he has made substantial improvements, the father has never been the primary caretaker of the children, each of whom has specialized needs. While he successfully engaged in services in the structured residential treatment program and the graduate house,[10] he admits that in the past he has turned to substances in stressful situations. As of the hearing date, he was still unable to provide a safe housing environment for his children. Indeed, stable housing was

---

[10] The father demonstrated that he had been in therapy and counseling for almost two years at the time of the hearing, and the judge commended him for doing well. However, the judge was understandably skeptical that any great progress had been made in such a short period of time, especially in light of the father's admittedly erratic past attempts at counseling. See Adoption of Lorna, 46 Mass. App. Ct. 134, 143 (1999) (despite recent cooperation and good intentions no error where record supported judge's finding that parents had not made sufficient progress).

19

something the children never experienced while in the father's care. In short, the judge did not abuse her discretion in concluding that the decrees should stand despite the father's claim that he made great progress.

We also discern no undue reliance on the delay in filing the rule 60 (b) motion or on principles of finality. The judge based her order primarily on the father's lack of a meritorious contention that would alter her detailed and extensive findings and determinations embodied in the original decrees -- a decision she noted that remained unchanged by the children's lack of definite placements.[11]

To the extent that the father further argues that the motion should have been allowed because of the disruptions in the department's adoption plans, the department is not required to relitigate the rights of an unfit parent simply because of changes in the plans, particularly where, as here, there is no extraordinary change shown in that parent's fitness. The judge did not abuse her discretion in denying the motion on this basis.

---

[11] The father's "perfunctory" argument that the decree terminating his parental rights should be vacated because it is "no longer equitable" is unavailing. See Adoption of Yvonne, 99 Mass. App. Ct. 574, 585 n.18 (2021).

20

5.  The children's changed circumstances.  As the children's attorney admitted at the hearing on the rule 60 (b) motion, the children's current status was not properly before the judge in that proceeding.[12]  See Adoption of Nate, 69 Mass. App. Ct. 371, 375, 377 (2007) (department's lack of progress in securing placement for child was not grounds to vacate termination decree; proper procedure for addressing department's progress in developing plans for children is permanency hearing under G. L. c. 119, § 29B).  See also Adoption of Scott, 59 Mass. App. Ct. 274, 277 (2003) ("in the absence of extraordinary circumstances . . . the [parent] may not rely on posttrial changes in a proposed plan for the child to reopen the proceedings").  For the same reason, the children's and the father's arguments concerning the children's changed circumstances are not properly before this court, and we do not consider arguments that either plainly exceed the scope of the

---

[12] We note that these arguments also exceeded the scope of the single justice's narrow order.  In response to arguments about the children's status, the judge retained jurisdiction over the case and advanced the permanency hearing, the appropriate forum for raising these issues.  See G. L. c. 119, § 29B.

21

single justice's order or that could have but were not raised at trial.

Amended decrees affirmed.

Order denying rule 60 (b) motion affirmed.

By the Court (Meade, Neyman & Walsh, JJ.[13]),

Paul Little

Clerk

Entered:  December 5, 2025.

---

[13] The panelists are listed in order of seniority.